Hector Emilio REYES–CARDONA, et al.,
Plaintiffs, Appellants,

v.

J.C. PENNEY CO., INC., Defendant,
Appellee.

No. 82–1231.

United States Court of Appeals,
First Circuit.

Submitted Sept. 17, 1982.

Decided Dec. 10, 1982.

---

Plinio Perez Marrero and Victor Cruz Ojeda, Hato Rey, P.R., on brief for plaintiffs, appellants.

Ramon Humberto Vargas and Calderon, Rosa-Silva & Vargas, Hato Rey, P.R., on brief for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Defendant J.C. Penney Co., Inc., ("Penney") brought a debt collection suit in the local courts of Puerto Rico. Penney sued Hector L. Reyes-Diaz, Isabel Diaz de Reyes, and what it believed to be their conjugal partnership. *See* Article 93 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 284 (Supp.1979). After Penney served Mrs. Diaz de Reyes with process, it discovered that she was not the wife of Hector L. Reyes-Diaz as it had thought, but that she was instead his mother. She was married to Hector *E.* Reyes-Cardona. Penney voluntarily withdrew the complaint against Mrs. Diaz de Reyes before she answered the complaint.

Subsequently, on May 20, 1981, Mrs. Diaz de Reyes, her husband, and their conjugal partnership filed this diversity suit against Penney in the federal district court. They alleged that Mr. Reyes-Cardona is now a mental patient diagnosed as paranoid schizophrenic, for they claim that when Mr. Reyes-Cardona learned about Penney's suit he "developed ... a state of excitement, anxiety and nervousness that ... required emergency psychiatric help." They added that such state persists, and that it causes Mrs. Diaz de Reyes considerable suffering.

Penney moved for summary judgment, explaining its inclusion of Mrs. Diaz de Reyes in its original suit as follows:

This mistake resulted from the credit application of Mr. Hector [L.] Reyes ..., wherein the name of Isabel Diaz de Reyes is set forth under the heading of "others authorized to use this account—relationship." Under said heading the name of Isabel Diaz de Reyes was stated and since the relationship to applicant Mr. Hector [L.] Reyes was not stated, it was wrongly assumed that Isabel Diaz de Reyes was the wife of Mr. Hector [L.] Reyes instead of his mother, as she turned out to be.

This explanation is not disputed. Penney asserted that under the law of Puerto Rico the facts did not make out a sufficient basis for a damage claim. The district court agreed.

The basic legal argument in this case is whether the law of Puerto Rico allows what would, in effect, be a damage action for wrongful prosecution based on negligence, or whether it requires a plaintiff in such a case to show more than simple negligence (to show, for example, malice, bad faith, gross mistake, or lack of probable cause). The appellants claim that only negligence is required. They point to Article 1802 of the Civil Code of Puerto Rico, which states:

A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done.

31 L.P.R.A. § 5141. The district court, however, relying upon precedents of the Commonwealth Supreme Court, held that the plaintiff must show that the defendant initiated the original suit "maliciously and without probable cause."

In our view, the law of Puerto Rico requires something more than simple fault or negligence (it imposes a standard stricter than ordinary "negligence") when the act complained of is the prior institution of a civil suit. Since plaintiffs here could prevail only through application of a most generous negligence standard, the grant of summary judgment for defendants was proper.

Because of the importance of properly interpreting the Commonwealth's law in these diversity cases, we have examined the precedents with some care. The opinions of the Commonwealth Supreme Court reveal that that court has applied different legal

standards at different times. The change, however, does not reflect a relaxation of "wrongful prosecution" standards as much as it reflects a simple shift in the focus of the Commonwealth's "mixed" civil and common law system, away from reliance upon common law precedents and towards increased emphasis upon its civil law traditions. *Cf. Republic Security Corp. v. Puerto Rico Aqueduct and Sewer Authority,* 674 F.2d 952, 958 (1st Cir.1982); Trias Monge, *La crisis del derecho en Puerto Rico,* 49 Rev.Jur. U.P.R. 1 (1980).

Thus, after initially denying claims based on wrongful prosecution of a civil case, *Lopez de Tord & Zayas Pizarro v. Molina,* 38 P.R.R. 737 (1928), and then effectively allowing such claims under Article 1802, *Serralles v. Sauri,* 44 P.R.R. 390 (1934), the Commonwealth Supreme Court allowed wrongful prosecution suits only where a plaintiff could meet prerequisites similar to those of the common law action for "malicious prosecution." *Diaz v. Distribuidores R.C.A. Victor, Inc.,* 47 P.R.R. 530 (1934). It required a showing that the original suit was filed "maliciously" and caused "some substantial matter of damage." *Id.* at 531. By 1954, these requirements had become:

> 1) that a civil action was instituted ... by defendant ...; 2) that the prosecution ended favorably to the plaintiff; 3) that it was instituted maliciously and without probable cause; and 4) that plaintiff sustained damages thereby.

*Fonseca v. Oyola,* 77 P.R.R. 496, 499 (1954); *see Pereira v. Hernandez,* 83 P.R.R. 156, 159–60 (1961); *Commonwealth Loan Corp. v. Garcia,* 96 P.R.R. 755, 756 (1968). These elements are those of an action for malicious prosecution at common law. *See* W. Prosser, *Handbook of the Law of Torts* 853 *et seq.* (4th ed. 1971); R. Heuston, *Salmond on the Law of Torts* 552 (15th ed.1969); R. Dias, *et al., Clerk & Lindsell on Torts* ¶ 18–38 (15th ed.1982).

By 1963, however, the Puerto Rico Supreme Court had again changed its approach. In *Berrios v. International General Electric,* 88 P.R.R. 106 (1963), it held that a plaintiff could prevail in an action for wrongful prosecution under Article 1802 even though he had not shown the "extraordinary circumstances" necessary to prevail in an action for "malicious prosecution." 88 P.R.R. at 112–13, 115. *Cf. W. Clay Jackson Enterprises, Inc. v. Greyhound Leasing & Financial Corp.,* 463 F.Supp. 666, 673 (D.P.R.1979); *Morales Monroig v. Firestone Interamerica Co.,* 302 F.Supp. 59, 61 (D.P.R.1969); *Barreto Almeyda v. First National City Bank,* 288 F.Supp. 99 (D.P.R. 1968). And, more recently, that court criticized past Puerto Rico cases that sought "to solve civil law problems through common law principles," and stated definitively that "nowadays ..., in Puerto Rico, the law in the field of damages is governed—both in form and in content—by the civil law system." *Valle v. American International Insurance Co.,* 108 D.P.R. 692, 695–97 (1979); *see Gierbolini v. Employers Fire Insurance Co.,* 104 D.P.R. 853, 855 (1976); *cf. Republic Security Corp. v. Puerto Rico Aqueduct and Sewer Authority, supra.* Thus, we shall assume that plaintiffs are correct in maintaining that their claim should be considered under the standards of Article 1802, the general tort provision of the Civil Code of Puerto Rico, and not according to standards set under the common law rubric of "malicious prosecution."

Unfortunately for plaintiffs, this change in the framework for analysis does not take them very far. Because of its broad scope, Article 1802, like its civil code counterparts elsewhere, is considered a "declaration of principle" whose application requires a consideration of the different interests at stake in different sorts of cases. C. Rogel Vide, *La responsabilidad civil extracontractual en el derecho espanol,* 49–50 (1977); *see Feliciano Rosado v. Matos,* 110 D.P.R. 550, 565–66 (1981). And, in applying general tort provisions to wrongful prosecution cases, the civil law has apparently identified the same interests as has the common law. *Cf.* R. Schlesinger, *Comparative Law* 32 (4th ed. 1980).

We believe it appropriate in diversity cases arising in Puerto Rico for federal courts to consult civil law sources, for these

are the sources that in large measure constitute the basis of the Commonwealth's own law—the law that we are bound to follow. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Obviously, the fact that these sources are relatively unfamiliar to federal appellate courts and often unavailable in English can create problems. But, these problems are not insuperable. For one thing, when a question is open under the law of Puerto Rico, federal courts can certify the question to the Commonwealth Supreme Court for resolution. *See In re Torruella-Serralles*, 684 F.2d 170 (1st Cir.1982) (per curiam ); *Pan American Computer Corp. v. Data General Corp.*, 112 D.P.R. ——, 82 J.T.S. 78 (May 14, 1982); P.R.Sup. Ct.R. 27, 4 L.P.R.A. App. 1–A (Supp.1977). For another thing, the federal district court judges in Puerto Rico are typically familiar with the relevant sources. *See Gual Morales v. Hernandez Vega*, 604 F.2d 730, 732 (1st Cir.1979). We obviously must rely heavily upon their research and opinions in evaluating those sources. Finally, if necessary we can review those sources available to us in law libraries, though our ability to provide a sophisticated evaluation of those sources is limited.

In this case, we have made a brief survey of the relevant sources available to us. A reading of them suggests to us a significant similarity between civil and common law on the point at issue. Civil law courts seek to redress damages caused by those who abuse their right to sue in a court of justice; on the other hand, they hesitate to discourage the use of the courts to settle grievances, for fear of inviting a return to the days of private justice. Semon, *Responsabilidad por el ejercicio de las acciones judiciales,* 46 Revista de Derecho, Jurisprudencia y Administracion 232, 235–36 (1948); H. Mazeaud, *et al., Lecons de droit civil,* tome 2, vol. 1, § 458 (5th ed.1973); *cf.* W. Prosser, *Handbook of the Law of Torts* 851 (4th ed.1971); G. Williams & B. Hepple, *Foundations of the Law of Torts* 42 (1976). Thus, civil law as well as common law jurisdictions seem to have imposed fairly strict limitations upon tort actions based on the bringing of a prior civil suit, requiring a showing of recklessness, bad faith, intent to cause harm, gross error, abuse of the right to bring a suit, or the like. *See* Appendix A.

Given a fairly consistent general view of the matter within the civil law system, there is no basis for supposing that the law of Puerto Rico is different. In *Diaz v. Distribuidores R.C.A. Victor, Inc., supra,* the Puerto Rico Supreme Court wrote that courts must limit damage claims for wrongful prosecution because "the courts should be open to litigants generally without serious consequences." 47 P.R.R. at 532. The parties concede that the requirements for showing liability for wrongful prosecution were strict until *Berrios v. General Electric, supra.* While there is language in *Berrios,* 88 P.R.R. at 115, that might be read as an application of a simple negligence standard, we believe that such language was simply meant to point to Article 1802 as the *source* of the relevant law. The Court in *Berrios* found that the defendant's conduct amounted to an "abuse of the law," 88 P.R.R. at 117 n. 3, and made clear that the defendant's conduct was outrageous. (Plaintiff, buying a stove and refrigerator, gave defendant a *certified* check from the bank; defendant, by threatening to attach the stove and refrigerator, forced plaintiff to give it a new check and thus put plaintiff at risk that the lost check would be found and honored.) In other words, there is no basis for believing that Puerto Rico's law differs from that of other civil law jurisdictions, for behind the differing formulae lie similar principles which guide all jurisdictions and those principles require a showing of more than mere negligence.

Under any but the most liberal negligence standard, plaintiffs here cannot prevail. Plaintiffs concede that Hector L. Reyes-Diaz authorized "Isabel Diaz de Reyes" to use his credit account. Her last name shows she is married to someone whose last name is "Reyes." Since the application says nothing further, a reader might justifiably conclude that Isabel was the applicant's wife. Because a husband

and wife form a legal partnership upon whose behalf either may incur a debt, Civil Code Article 1308(1), 31 L.P.R.A. § 3661(1) (Supp.1979), Penney served process upon Mrs. Reyes-Diaz. We cannot see how, in the absence of some special circumstance not alleged here, Penney could have been more than negligent (if that) when it filed suit without making further inquiries. *See Gierbolini v. Employers Fire Insurance Co.,* 104 D.P.R. at 859 ("simple error of judgments, simple oversights, the slight lapses that are part of human nature" do not constitute fault or negligence); *see also Double AA Properties Corp. v. Secretario de Justicia,* 109 D.P.R. 235, 242 n. 9 (1979). Thus, there is no "genuine" issue of "material" fact. Fed.R.Civ.P. 56. The judgment of the district court granting summary judgment for the defendant is therefore

*Affirmed.*

## APPENDIX A

We have found the following civil law references suggesting that a showing of more than simple negligence may be necessary to sustain a tort action based upon the bringing of a prior civil suit:

Argentina: *see* J. Bustamante Alsina, *Teoria general de le responsibilidad* 362 (2d ed.1973); A.G. Spota, *Tratado de derecho civil,* tome 1, vol. 2, 254–55 (1967). Brazil: *see* Code of Civil Procedure, Arts. 16, 17; Pontes de Miranda, *Commentarios ao Codigo de processo civil,* tome I, 376 *et seq.* (1974). Colombia: *see* A. Valencia Zea, *Derecho civil,* tome III, 338 (5th ed. 1978). France: *see* H. Mazeaud, *et al., Lecons de droit civil,* tome 2, vol. 1, § 458 (5th ed. 1973); G. Marty & P. Raynaud, *Droit civil,* tome II, vol. 1, 418–19 (1962); B. Starck, *Droit civil: Obligations* 126 (1972); A. Weill & F. Terre, *Droit civil: Les obligations* 698 (1975). Italy: *see* G.P. Chironi, *La colpa nel diritto civile odrieno,* tome 1, § 113 (1923); E. Bonasi Benucci, *La responsabilita civile* 251–52 (1955). Louisiana: *see* 12 F. Stone, *Louisiana Civil Law Treatise (Tort Doctrine)* § 260 at 361 (1977). Portugal: *see* F.L. Cuhna de Sa, *Abuso do direito* 268–70 (1973), *citing* Judgment of the Su-

preme Court of Portugal of January 21, 1972. Quebec: *see* R. David, *Les grands systemes de droit contemporains* 73 (6th ed. 1974); J.L. Baudouin, *Traite elementaire de droit civil: La responsabilite civile delictuelle* 68–70 (1973). Spain: *see* A. Borrell Macia, *Responsabilidades derivadas de la culpa extracontractual civil* § 136 (2d ed. 1958); Judgment of the Supreme Court of Spain of January 4, 1979, XXV Jurisprudencia Civil (2d series) No. 2, 27, 46. Uruguay: *see* J. Peirano Facio, *Responsabilidad extracontractual* 299–300 (1979). Venezuela: *see* P. Pineda Leon, *Lecciones elementales de derecho procesal civil,* tome I, 280–81 (1960); L. Rodriguez-Arias Bustamante, *Abuso del derecho* 100 (1971).