Liston Donneal BOSCHETTE, et al., Plaintiffs,

v.

Kenneth BACH, et al., Defendants.

Civil No. 93–1528(JP).

United States District Court, D. Puerto Rico.

Jan. 2, 1996.

Rafael F. Castro Lang, San Juan, P.R., for Plaintiff.

Luis N. Blanco Matos, San Juan, P.R., for Defendant.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it the motion of Liston Boschette, Jr. and Norma Jean Boschette requesting summary judgment (docket No. 101), joined party Liston Boschette III's motion for summary judgment (docket No. 107), and defendant George Kenny Buck's opposition to both motions (docket No. 114). We note that the motion for summary judgment filed by the plaintiffs and that filed by joined party Liston Boschette III are identical. Therefore, like defendant Buck, we shall address both motions together, referring to the movants collectively as "the Boschettes." For the reasons that follow, both motions for summary judgment are hereby **GRANTED.**

## I. INTRODUCTION

Plaintiffs Liston Boschette, Jr. and Norma Jean Boschette initiated this diversity tort action seeking damages to redress the harm that allegedly resulted from harassing telephone calls made by defendant. Plaintiffs claim defendant Buck attempted to extort them with respect to certain videos of their son having sex with Nanette Guzmán and Lissette Rodríguez. Defendant Kenny Buck admits that he made numerous phone calls to the Boschette residence in Fort Myers but denies the allegations of extortion. Defendant filed a counterclaim and joined Liston Boschette III, Evelyn Torres and Rosaura González Rucci, alleging that the present action is only one instance in a series of acts taken by plaintiffs in concert with the joined parties with the specific purpose of harassing and injuring him. He alleges that joined parties Liston Boschette III, Evelyn Torres [1]

---

1. Mr. Buck's counterclaim against Ms. Torres for malicious prosecution and conspiracy to harm

and Rosaura González Rucci,[2] individually and in concert with Mr. and Mrs. Boschette, Jr., maliciously instituted criminal proceedings against him and conspired in the decision to file the instant case with full knowledge that 'the allegations contained therein were false or with reckless disregard for the truth. In paragraph six of his counterclaim, defendant Buck alleges that plaintiffs' complaint constitutes an abuse of process, filed with the sole intent of harassing, embarrassing and humiliating him.

The criminal proceedings referred to in defendant Buck's counterclaim consist of a police report filed by joined party Torres against defendant Buck for events that occurred on October 29, 1992. On that date defendant Buck extracted a videocassette from Liston Boschette III's condominium, where Evelyn Torres was residing. At Evelyn Torres' request, both Rosaura González Rucci and Ms. Rodesia Picardo came over to the condominium while defendant Buck was there. Joined party Torres filed a police report against defendant Buck on February 19, 1993, for theft of the videocassette. Joined party González Rucci was named as a witness on the police report.

In their motions for summary judgment, the Boschettes claim that defendant Buck's claim for malicious prosecution must fail because he was never criminally prosecuted for removing videotape No. 4 from Liston Boschette III's condominium. As to the claim of abuse of process, the Boschettes assert that Puerto Rico law does not permit a civil action for damages as a consequence of allegations made in a civil suit. Defendant Buck counters that cases involving extreme circumstances are excepted from this general rule and asserts that the instant case falls within such exception.

## II. UNCONTESTED FACTS

The parties have agreed to the following facts. *See* Second Further Initial Scheduling Conference Order (docket No. 108), plaintiffs' Motion for Summary Judgment, Statement of Uncontroverted Material Facts (docket No. 101), joined party Liston Boschette III's Motion for Summary Judgment, Statement of Uncontroverted Material Facts (docket No. 107), and defendant Buck's Opposition, Statement of Uncontroverted Facts (docket No. 114).

1. Before the events which gave rise to this Complaint, both Ms. Nanette Guzmán and Ms. Lissette Rodríguez were involved in a physically intimate relationship with Mr. Liston Donneal Boschette III.

2. During the time when joined party Liston Boschette III was involved in physically intimate relationships with Ms. Guzmán and Ms. Rodríguez, certain videotapes were made of Liston Boschette III having sexual intercourse with Ms. Guzmán, and some other videotapes were made of Liston Boschette III having sexual intercourse with Ms. Rodríguez. Four videotapes in which Liston Boschette III appears having sexual intercourse with Ms. Guzmán or Ms. Rodríguez are currently in the Court's vault, and their contents are described in an Order of the Court issued on May 11, 1994 (docket No. 73).

3. On the night of October 29, 1992, defendant George Kenny Buck extracted a videocassette from the residence of joined party Liston Donneal Boschette III, without the knowledge of the people present that night. The videocassette extracted has been identified as videocassette No. 4, which is kept in the Court's vault. Present at Liston Boschette III's home that night were: Evelyn Torres, George Kenny Buck, Rosaura González Rucci, and Rodesia Picardo.

4. On February 18, 1993, Evelyn Torres filed a police report against defendant Buck for taking the videotape on October 29, 1992. Rosaura González Rucci was named as a witness in that report.

5. The District Attorney in charge of joined party Torres' complaint declined to prosecute defendant Buck.

6. Defendant Buck made various telephone calls to the residence of plaintiffs Mr.

his reputation was dismissed with prejudice in a Partial Judgment dated December 19, 1995.

2. Pursuant to a joint stipulation between Mr. Buck and Ms. Rucci, all claims against Ms. Rucci were dismissed in a Partial Judgment dated March 9, 1995 (docket No. 111).

and Mrs. Boschette Jr. in Fort Myers, Florida. Some of these telephone calls were recorded.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988).

Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of material fact exists. *Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798, 804 (1st Cir.1987). A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack*, 871 F.2d at 181.

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the Court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence [necessary] to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). The non-movant cannot rest upon mere allegations or

denial of the pleadings. Fed.R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968), *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968).

## IV. MALICIOUS PROSECUTION

We refer the reader to the Opinion and Order dated December 19, 1995, and entered on December 20, 1995, in this same case, dealing with codefendant Evelyn Torres Irizarry's motion for summary judgment. Ms. Torres Irizarry's motion was resolved along lines similar to those drawn herein. Accordingly, this opinion should be read in conjunction with the opinion disposing of Ms. Torres Irizarry's motion.

The garden of legal causes of action has produced many varieties from the seed of unjustified litigation, both criminal and civil. The Civil Code of Puerto Rico contains no provision explicitly acknowledging the cause of action of malicious prosecution. But the courts, by way of a common law interpretation of the Civil Code, recognized a cause of action for malicious prosecution emanating from Article 1802. P.R.Laws Ann. tit. 31 § 5141 (1991). Article 1802 states:

A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt liability, but entails a reduction of the indemnity.

The Supreme Court of Puerto Rico elucidated this provision in *Hernández v. Fournier*, 80 P.R.R. 94, 97 (1957):

According to the section in question [§ 1802 of Civil Code], which establishes one of the fundamental principles of our jurisprudence—that of the Aquilian liability for personal acts—all damage, whether material or moral, gives rise to reparation if three requirements are met: *first*, proof of the reality of the damage suffered; *sec-*

*ond*, a causal relation between the damage and the action or omission of another person; and *third*, said act or omission is negligent or wrongful. (Citations omitted). That precept "... does not admit a limitation or exception of any kind; and consequently, the wrongdoer who is guilty of fault or negligence, whatever the consequences may be, is bound to repair the wrong, that the victim be delivered from the effects of the damage suffered." (Citation omitted). Thus, the manner how damage is caused is immaterial. And, by the same token, material as well as purely moral damages are recoverable in our jurisprudence.

■ The cause of action of malicious prosecution was created under the umbrella of Article 1802 of the Civil Code, initially for cases involving prior criminal proceedings. However, the courts' interpretation of Article 1802 with respect to malicious prosecution was more restrictive than the general damage action envisioned by the *Hernández* Court. Interpretation of Puerto Rico's Civil Code has closely paralleled development of the common law in this field. Puerto Rico's law on malicious prosecution based on prior criminal proceedings has been distilled to its counterpart in the United States common law, as codified in the Restatement Second of Torts. Accordingly, under Puerto Rico's civil law, malicious prosecution based on prior criminal proceedings requires the coalescence of four elements: i) institution or instigation of criminal proceedings against the claimant; ii) maliciously and without probable cause; iii) which end favorable for the claimant; and iv) whereby the claimant suffers damages. *Raldiris v. Levitt & Sons*, 103 P.R.R. 778, 781 (1975).

"Because of its broad scope, Article 1802, like its civil code counterparts elsewhere, is a 'declaration of principle' whose application requires a consideration of the different interests at stake in different sorts of cases." *Reyes–Cardona v. J.C. Penney & Co., Inc.*, 694 F.2d 894, 896 (1st Cir.1982) (as stated by Justice Breyer when sitting as Circuit Judge for the First Circuit). Inevitably, Puerto Rico courts had to address the possibility of expanding the cause of action of malicious prosecution to cases involving prior civil suits in addition to those involving prior criminal proceedings. *Díaz v. Distribuidores R.C.A. Victor, Inc.*, 47 P.R.R. 530 (1934), involved a suit by Distribuidores R.C.A. Victor, Inc. against a single woman, Margot Noya, for the alleged failure to make three installment payments on a Victrola. In fact Noya had made all payments on time. Ms. Noya later married Mr. Díaz, who sued Distribuidores R.C.A. Victor, Inc. for malicious prosecution, basing his claim on Distribuidores R.C.A. Victor's previous civil suit against Ms. Noya. Plaintiff Díaz urged the Supreme Court of Puerto Rico to overrule prior decisions holding that a cause action for malicious prosecution did not lie for the malicious institution of a civil case. After surveying the state of the law in Europe, the Court held that filing of a civil case did not *per se* cause damages and that to prevail the plaintiff had to show some additional damage. *Id.* at 531. The Court did not rule out the possibility that in some civil cases—for example, where a plaintiff must post a bond to prevent repossession of his goods—that such additional damages may ensue. *Id.* The Court noted that attorney's fees were not available in municipal court, where Noya had been sued originally, but were generally available in other courts, thus suggesting this as a rationale for not allowing a cause of action for malicious prosecution where the only damage is the bringing of the suit itself. *Id.* at 532. Rather, the proper remedy would be to seek attorney's fees and costs in the initial suit.

The Supreme Court of Puerto Rico decided *Fonseca v. Oyola* in 1954. 77 P.R.R. 496. Mrs. Fonseca rented a property for $14.00 per month. The property was sold and her new landlord demanded $20.75 per month, an amount in excess of that permitted by law. Mr. Oyola repeatedly sued Mrs. Fonseca, even after she obtained a judgment in her favor. The emotional toll of being forced to defend these meritless suits caused Mrs. Fonseca to drop from 140 pounds to 90, and she ultimately lost her business. The Supreme Court held that she had a cause of action for malicious prosecution and stated that its elements were the same as those for malicious prosecution based on a prior criminal proceeding. *Id.* at 499.

96

In 1963, the Supreme Court reexamined the issue of liability for damages caused by prior civil actions in *Berríos v. International General Electric.* 88 P.R.R. 106. The Berríos had to draw a check payable to General Electric even though they had fully paid for a stove and refrigerator, in order to prevent the appliances from being repossessed for alleged failure to make an installment payment. The Berríos later sued General Electric for malicious prosecution and wrongful attachment. The Court allowed a damage action under Article 1802 based on the attempted repossession but reaffirmed the general rule that in Puerto Rico there is no cause of action for malicious prosecution based on a prior civil case. *Id.,* 88 P.R.R. at 112, 115. With regard to *Fonseca,* the Court found it was a case involving exceptional circumstances and indeed was the only case sustaining a cause of action for malicious prosecution based on a prior civil suit.

In *Reyes–Cardona,* 694 F.2d at 897, the United States Court of Appeals for the First Circuit recognized the general rule that a plaintiff must show something more than mere negligence to state a claim under Article 1802 for malicious prosecution based on a prior civil suit. After reviewing various civil law sources, the First Circuit concluded that:

civil law as well as common law jurisdictions seem to have imposed fairly strict limitations upon tort actions based on the bringing of a prior *civil suit,* requiring a showing of recklessness, bad faith, intent to cause harm, gross error, abuse of the right to bring a suit, or the like.

Thus, it is clear that the elements of malicious prosecution that must be alleged and proved where the prior proceeding is criminal are: i) institution or instigation of criminal proceedings against the claimant; ii) maliciously and without probable cause; iii) which end favorably for the claimant; and iv) whereby the claimant suffers damages. As far as the doctrine has been adapted to cases involving prior civil proceedings (there having been only one successful case in Puerto Rico), courts have adopted these four elements but have also required a further showing of "exceptional circumstances" and additional damages beyond filing of the suit itself,

a hurdle not imposed when the cause of action is based on prior criminal proceedings. *Jiménez–Alvarez v. Silén–Maldonado,* 92 J.T.S. 95 at 9725; 132 P.R. Dec. ___ (1992).

This higher standard for malicious prosecution actions based on prior civil proceedings is grounded in the belief that the courts generally should be open for the settlement of disputes. As stated in *Reyes–Cardona:*

Civil law courts seek to redress damages caused by those who abuse their right to sue in a court of justice; on the other hand, they hesitate to discourage the use of the courts to settle grievances, for fear of inviting a return to the days of private justice.

694 F.2d at 897. It may be that the courts are more receptive to malicious prosecution claims based on prior criminal proceedings than they are to claims based on prior civil proceedings because of the former's potentially more devastating effects on the individual and also because criminal proceedings implicate the police power of the state, a power historically viewed with greater suspicion.

With respect to defendant Buck's counterclaim that the Boschettes maliciously instituted criminal proceedings against him, he need only show the four traditional elements of malicious prosecution noted above. However, a review of the record demonstrates that he cannot point to facts sufficient to support even the first element: institution of criminal proceedings. Neither party disputes that, while Ms. Torres did complain to the police that Mr. Buck had impermissibly removed Videocassette No. 4 from Liston Donneal Boschette III's condominium, the district attorney who reviewed the complaint declined to prosecute defendant Buck. Criminal proceedings are not commenced until process is issued to bring the accused before a judicial officer, the accused is arrested, or an indictment is returned or an information is filed against him. Restatement (Second) of Torts § 654 (1977). There having been no criminal proceedings against him, defendant Buck has no cause of action for malicious prosecution.

## V. ABOUSE OF PROCESS

 Defendant Buck's counterclaim asserts that the instant case constitutes an abuse of process because it was filed with the sole intent of harassing, embarrassing and humiliating him. In his opposition to *the motions for summary judgment*, Buck denies that the complaint was filed for the avowed purpose of stopping the harassing telephone calls, since these ceased over two months before the Complaint was filed. He asserts that therefore it must have been filed for some unexpressed but improper purpose. The Boschettes, relying on *Pereira v. Hernández*, 83 P.R. Dec. 160 (1961), argue that Puerto Rico law does not permit a civil action for damages suffered as a consequence of a civil suit. The section of defendant Buck's opposition entitled "Abuse of Process" lists the elements of a malicious prosecution claim, not those of abuse of process.[3] Thus, it would appear that there is some confusion with respect to the nature of defendant Buck's counterclaim. The First Circuit recently resolved a case in which the common law causes of action of abuse of process and malicious prosecution based on a prior civil suit had likewise been confused. *Simon v. Navon*, 71 F.3d 9 (1995). *Simon* involved a business dispute between the shareholders of Maine Coast Trading, a closely-held corporation. Minority shareholder Simon, discontent with the majority shareholders' (the Navons) use of the company's accounts receivable, requested that the Israel Discount Bank freeze the company's assets. *Id.* at 12. Maine Coast Trading, through the Navons, sued the Bank in New York state court to obtain release of the assets and later named Simon as a defendant. Simon sued the Navons in federal court for breach of contract and other causes of action, including malicious prosecution based on the Navons' state court action. At the close of all the evidence in the federal case, the district court recharacterized Simon's malicious prosecution claim as one for abuse of process, to which the Navons objected. The jury found for Simon on the abuse of process claim. The Navons appeal-ed, alleging that amendment of the pleadings after close of evidence was unfairly prejudicial and that Simon failed as a matter of law to prove the elements of abuse of process.

The First Circuit commented extensively on the torts of malicious prosecution and abuse of process in resolving the district court's confusion as to how to characterize Simon's claim. It stated that generally the tort of malicious prosecution is used to challenge the whole of a lawsuit while abuse of process covers the allegedly improper use of individual legal procedures after a suit has been filed properly. *Id.* at 15. Abuse of process cases typically involve misuse of such procedures as discovery, subpoenas, and attachment. *Id.* (collecting cases involving abuse of discovery, subpoenas and attachment). Filing of a lawsuit is a "regular" use of process and a showing of bad motive in connection with regular process is insufficient to show an act of abuse. *Id.* Occasionally, however, courts will recognize a claim for abuse of process based on the initiation of a case where the action is filed for the *sole purpose* of forcing action in a collateral matter. For example, A, without grounds to do so, threatens to sue B for sexual harassment if B doesn't pay a debt he owes to A; A then proceeds to follow through on the threat. "In such a case, the otherwise normal procedure of filing a lawsuit is transformed into an act of abuse by the coincidence of the threat." *Id.* The Court of Appeals stated, however, that even assuming state law recognizes an abuse of process claim based on the initiation of a lawsuit, a party can only prevail if he proves the two elements of an abuse of process claim: ulterior motive and an act of abuse. *Id.* at 16. An act of abuse cannot be inferred from evidence of motive alone. *Id.* The First Circuit held that Simon had failed to point to some evidence demonstrating a specific link between the New York lawsuit and an impermissible, collateral purpose of the Navons. *Id.* The Court of Appeals noted that Simon could have satisfied this requirement with evidence of an explicit threat to Simon or a disclosure to a third

---

**3.** *The elements of abuse of process are ulterior motive and abuse of a judicial procedure. Stated another way, abuse of process is the misuse of* process for any purpose other than that which it was designed to accomplish. Restatement (Second) of Torts § 682 (1977).

party that the Navons' *sole purpose* in suing was to damage Simon's credit rating. *Id.*

The instant case was brought in federal court due to the diverse citizenship of the parties and is subject to Puerto Rico law. The action of abuse of process is less developed in the civil code than in the common law. *See Harrington v. U.S.*, 748 F.Supp. 919, 934 (D.P.R.1990) ("Although the tort of abuse of process has been recognized in Puerto Rico, the Supreme Court has failed to identify its essential elements"). Like its cousin malicious prosecution, abuse of process finds its roots in Article 1802 of the Civil Code, Puerto Rico's general tort provision. *Flamand v. Am. Int'l Group, Inc.*, 876 F.Supp. 356, 370 (D.P.R.1994) (citing *Reyes–Cardona*, 694 F.2d at 896). As with malicious prosecution, it has been left to the courts to determine what are the elements of each cause of action arising under Article 1802.

■ Puerto Rico's civil law recognizes the doctrine of "abuso del derecho" (abuse of law or right) as well as "uso ilegal o indebido de un procedimiento judicial" (illegal or undue use of judicial process). *See, e.g., Soriano–Tavárez v. Rivera Anaya*, 108 T.P.R. 705, 710 (1979); *Acosta & Rodas, Inc. v. P.R. Am. Ins. Co.*, 112 T.P.R. 730, 745 (1982). These doctrines are grounded in the fundamental judicial tenet that all rights and faculties sanctioned by the civil law must be exercised reasonably, justly and legitimately. *Soriano–Tavárez*, 108 T.P.R. at 710. The Supreme Court of Puerto Rico has held that this requirement of good faith extends to the Commonwealth's entire judicial system. *Velilla v. Pueblo Supermarkets, Inc.*, 111 T.P.R. 735 (1981). Abuse of law is any act that complies with the letter of the law but leads to a practical result that is contrary to the law's spirit and purpose. *Soriano–Tavárez*, 108 T.P.R. at 712 (citing civil law treatises); *see also Velilla*, 111 T.P.R. at 736 (exercise of a right is illegitimate when it produces results that are at odds with right's socioeconomic ends).

■ Some of the Puerto Rico cases alleging abuse of the law involve perversion of a general legislative scheme. *Velilla* is such a case. *Velilla* involved a plaintiff claiming damages from a defendant supermarket. 111 P.R.R. at 736. Under Puerto Rico law, extrajudicial claims toll the statute of limitations only when made to a liable party (*i.e.*, Pueblo). However, Pueblo referred the plaintiff to International Claims, Inc., an independent insurance adjustor. Pueblo knew that the plaintiff was trying to reach an agreement with this company and yet failed to reveal that International Claims did not represent it until after the one-year statute of limitations had expired. Pueblo then alleged that the plaintiff's claim was time-barred. The Court held that Pueblo Supermarkets abused its rights by intentionally referring the plaintiff to International Claims, Inc. when International did not represent Pueblo, and then withholding this information until the statute of limitations had run. *Id.* The Court found that the purpose of the statute of limitations was to induce plaintiffs to diligently prosecute their claims, not to provide a refuge to shrewd defendants, and that the defendant's conduct was inconsistent with this purpose. *Id.* at 737.

Likewise, the Supreme Court held in *Soriano–Tavárez* that a tenant could not collect treble damages from his landlord for violation of rent control laws when the tenant had ceased to occupy the property in question and was instead himself subletting it for amounts far exceeding those permitted by the rent control laws. 108 T.P.R. at 711. The Court noted that the protection of the rent control laws should not be perverted to afford protection to a sublessor who denied its benefits to the true tenants: his sublessees. *Id.* at 714. The Court stated:

> Therefore, his unlawful profits stemming from his privileged position as tenant—after losing his tenant status—plus his claim that the owner should still consider him a tenant, constitutes an abuse of law barred by the doctrine because it is contrary to the spirit and purpose of the Reasonable Rents Act. Consequently, to allow his punitive action for treble damages against the owner would be at variance with the judicial principle which proscribes the antisocial exercise of rights.

*Id.* at 711.

■ In the above cases, abuse of the law is a doctrine quite different from common

law abuse of process. Rather, abuse of the law as illustrated in these cases is used similarly to the common law equitable doctrines of waiver, "unclean hands" and estoppel. However, abuse of process claims in Puerto Rico may also involve the misuse of specific judicial proceedings, such as attachment of chattel goods. For example, the defendants in *Acosta & Rodas* were found guilty of wrongful attachment and, more specifically, of illegal and undue use of process. 112 T.P.R. at 745. The latter charge was for obtaining an order to dissolve the attachment and giving it to a non-party in exchange for consideration so that the non-party could use the order for ulterior purposes. The Puerto Rican–American Insurance Company (PRAICO) had issued performance and payment bonds to cover a construction project undertaken by Acosta & Rodas in Yauco. A supplier of goods sought payment from PRAICO for materials used by Acosta & Rodas in a construction project in Guánica. Inexplicably, PRAICO paid the supplier $12,749.91 in settlement of the demand, which it was not obliged to do since the bonds it had issued did not cover the Guánica construction project. PRAICO then sued Acosta & Rodas for $100,000.00 for payments allegedly made to third parties under the bonds, falsely averring that numerous demands for payment had gone unheeded. PRAICO proceeded to attach Acosta & Rodas' machinery, trucks and construction equipment from the Yauco project, a batching plant located in Guánica, the proceeds of four houses in the Guánica development, various stock certificates and the personal automobiles of Messrs. Acosta and Rodas. Without notifying Acosta & Rodas, PRAICO then entered into an agreement with the Banco Crédito y Ahorro Ponceño, which had provided financing for Acosta & Rodas' Yauco development. Pursuant to this agreement, PRAICO obtained an order dissolving the attachment in exchange for reimbursement of the $12,-749.91 it had paid out, relief from its obligations under the bonds, some of the share certificates and the construction equipment. The Bank then used the order to control Acosta & Rodas' assets for ulterior purposes such as obtaining loans and substituting a party of its choosing to complete the project.

The Supreme Court upheld the trial court, stating that "[t]he evidence in the record definitively and doubtlessly supports the conclusion of the trial court. Procedurally and substantially, there was a clear abuse of process." *Id.* at 756. This is abuse of process in its common law sense: the use of a legal process to accomplish a purpose for which it was not designed.

■ From these cases it would appear that while the Civil Code is moving in the direction of recognizing a general cause of action analogous to the common law's abuse of process, the law is somewhat unsettled. Even assuming that Article 1802 of Puerto Rico's Civil Code includes a general cause of action for abuse of process, there is no evidence of ulterior motive or abuse in the instant case. Defendant Buck has failed to present any evidence that the Boschettes' sole purpose in bringing this suit was to harass, embarrass and humiliate him. In his opposition, defendant Buck points out that Mr. and Mrs. Boschette Jr. declared in their depositions that they brought the instant suit in an effort to stop defendant's harassing telephone calls to the Boschettes' residence in Fort Myers. Defendant Buck states that this could not possibly have been their true motive since he ceased telephoning the Boschettes over two months before they filed their complaint.

Nonetheless, defendant Buck admits that he has no evidence to support his allegations that the Boschettes filed the instant case for some ulterior purpose when he states in his opposition to the motions for summary judgment: "This complaint was filed for another, *as yet unexpressed reason.* At trial, defendant shall present evidence demonstrating what the real intent of the filing of the complaint was" (emphasis added). The purpose of summary judgment is to determine whether controverted issues of fact exist that require a trial to resolve them. If defendant Buck has evidence that plaintiffs filed the instant suit solely for some ulterior, collateral purpose, he should have presented it in his opposition to the motions for summary judgment. As stated in *Celotex,* once the party moving for summary judgment points to a lack of evidence in the non-moving party's

case, the burden shifts to the non-moving party to show that he can produce sufficient evidence to enable him to reach the jury with his claim. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554; *Hahn,* 523 F.2d at 468. The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed.R.Civ.P. 56(e). Although defendant may use circumstantial evidence to prove that plaintiffs had some ulterior, collateral purpose in filing the instant suit, the mere denial that it was to stop the harassing telephone calls is insufficient. No reasonable juror, based solely on defendant's denial that the Boschettes' expressed purpose is true could conclude that the Boschettes had an ulterior motive in filing this suit. Defendant Buck cannot rest on mere denials—he must produce some affirmative evidence of an improper, ulterior purpose. The only evidence before the Court with respect to the Boschettes' reason for filing this suit is their declarations that it was to stop the telephone calls. Moreover, defendant Buck has failed to produce evidence showing an act of abuse. *Navon* illustrates that evidence of motive alone is insufficient to prove an act of abuse. Filing of a lawsuit is a regular use of process. Since defendant Buck has failed to produce any evidence that the Boschettes were motivated by an ulterior purpose, and has likewise failed to produce evidence of an act of abuse, his opposition is insufficient to withstand plaintiffs' motion for summary judgment.

■ If, however, defendant Buck's counterclaim is one of malicious prosecution based on a prior civil case, it is equally without merit since no prior civil case has been adjudicated in his favor. Defendant Buck states in his opposition to the motions for summary judgment that the determination of whether the civil action ended in his favor cannot be "made until such a time as the complaint itself is finally adjudged." Buck insists that "basic principles of judicial economy mandate that the counterclaim not be dismissed until judgment is entered on the complaint and, of course, only if plaintiffs prevail." This is an incorrect statement of the law. A counterclaim asserting malicious prosecution is premature as a matter of law until the underlying suit on which it is based is fully and finally adjudicated in favor of the claimant. *See Simon,* 71 F.3d at 17; *accord Mi–Jack Prod. v. Int'l Union of Operating Eng'rs, Local 150,* 1995 WL 115516, *2, 1995 U.S.Dist. LEXIS 3155, *4–5 (N.D.Ill.1995); *Aetna Casualty and Surety Co. v. Kellogg,* 856 F.Supp. 25, 29 (D.N.H.1994); *Hydranautics v. Filmtec Corp.,* 70 F.3d 533, 536–537 (9th Cir.1995) (citing 1 Harper, James & Gray, *The Law of Torts* at 4.8 (2d ed. 1986)); *Shulman v. Miskell,* 626 F.2d 173, 176 n. 10 (D.D.C.1980).

For these reasons, the Court will enter a judgment dismissing Mr. Buck's counterclaim against Norma Jean Boschette, Liston Donneal Boschette, Jr., and Liston Donneal Boschette III.

All other pending motions not in accordance with this Opinion are hereby **DENIED.**

IT IS SO ORDERED AND ADJUDGED.