**MICROSOFT CORPORATION,
et al., Plaintiffs,**

v.

**COMPUTER WAREHOUSE,
et al., Defendants.**

**No. Civ. 98–2136(SEC).**

United States District Court,
D. Puerto Rico.

Feb. 11, 2000.

Jorge E. Pérez–Díaz and Heidi L. Rodriguez–Benitez, Pietrantoni Mendez & Alvarez, San Juan, P.R., for plaintiffs.

Carlos Rodríguez–García, San Juan, P.R., for defendants.

Ivan Diaz–Lopez, San Juan, PR, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

This case is before the Court on the plaintiffs' motion to dismiss a counterclaim filed by defendants Metro Computers, Inc., Manuel González and the conjugal partnership with his wife (hereinafter, collectively, "Metro") for the alleged wrongful procurement of an ex parte seizure and impounding order. (**Docket # 37**). Because Metro's counterclaim (**Docket # 47**) fails to state a claim upon which relief can be granted the Court dismisses it pursuant to Fed.R.Civ.P. 12(b)(6).[1]

### Rule 12(b)(6) Standard

In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Education*, 526 U.S. 629, 119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999). *See also Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st

---

1. "Challenges to the sufficiency of a counterclaim ... under Rule 12 ... are subject to the same rules as when they are directed toward an original complaint." 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1407, at 38 (2d ed.1990).

Cir.1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory").

But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988)). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Id.* In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle*, 142 F.3d at 508 (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). *See also Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999). Courts, moreover, "will not accept a complainant's unsupported conclusions or interpretations of law." *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir.1993).

While in ruling upon a motion to dismiss the court must ordinarily ignore matters outside the pleadings, *see, e.g., Maldonado v. Dominguez*, 137 F.3d 1, 6 (1st Cir.1998), *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir.1997); *Vega–Rodriguez v. Puerto Rico Telephone Co.*, 110 F.3d 174, 177 (1st Cir.1997), it may consider any documents which are referred to in the nonmovant's pleadings and which are central to his or her claim. *Cf. Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir.1998). Thus, we set forth the relevant facts as alleged in Metro's amended counterclaim, aided by the various documents therein referred, drawing all reasonable inferences in Metro's favor. *See Doe v. Walker*, 193 F.3d 42, 42 (1st Cir.1999).

**Background**

The plaintiffs are the copyright and trademark owners of various software programs. On October 13, 1998, they filed this action for infringement of their copyrights and trademarks and for unfair competition, tort and unjust enrichment stemming from the illegal reproduction and sale of their products. (**Docket # 1**). They also moved for a temporary restraining order, an order for impoundment, a writ of seizure, and an order to show cause pursuant to 17 U.S.C. §§ 502, 503(a) and Fed. R.Civ.P. 65(b). (**Docket # 2**). In support of this motion, the plaintiffs submitted, *inter alia*, an unsworn declaration under penalty of perjury by Roberto Morales Rivera, a private investigator. (**Id.**, Exhibit # 7).

In his declaration, Morales Rivera affirms as follows. On September 5, 1998, "a person under [Morales Rivera's] supervision" (hereinafter the "unidentified person") visited Metro's computer store. There he was assisted by Manuel González, Metro's purported owner. (**Id.**, Exhibit # 7, at ¶¶ 2–3). González offered to sell the unidentified person a tower clone central processing unit ("CPU") with the plaintiffs' programs installed for a purchase price of $800.00. A few days later, Morales Rivera telephoned González at the store to inquire whether the offer made to the unidentified person was still good. González said that it was. Morales Rivera further asked González whether he could additionally install another one of plaintiffs' programs for the same purchase price. González said that he could.

Morales Rivera subsequently went to the store to pick up his CPU. There, González, who was still in the process of installing the programs, asked Morales Rivera if he would like yet another one of plaintiffs' programs installed as well, to which Morales Rivera agreed. Morales Rivera was able to see how González installed the software. After all the components had been installed, Morales Rivera

paid González the purchase price and left with the CPU. The software programs in the CPU's hard disk were subsequently examined by a computer technician and determined to have been illegally installed. (**Id.**, Exhibit # 8).

On October 14, 1998, upon the motion by the plaintiffs which was in part supported by Morales Rivera's unsworn declaration, the Court issued a "Temporary Restraining Order, and Order for Impoundment, Seizure and Delivery, and Order to Show Cause Why Preliminary Injunction Should Not Be Issued." (**Docket # 5**). The Court ordered that following items in Metro's control be seized, impounded, photographed and video filmed and/or recorded:

1. All copies, or reproductions of Plaintiffs' copyrighted software programs, including, but not limited to, Microsoft Office 97 (Professional Edition), Microsoft Office 97 (Standard Edition); Microsoft Excel 97; Microsoft Access 97; Microsoft Power Point 97; Microsoft Outlook 97; Microsoft Windows 95, Microsoft Windows 98, Adobe Pagemaker 6.5 (Windows), Adobe Photoshop 4.0, and works derivative thereof, among others; and of other copyrighted works owned by Plaintiffs as identified by Plaintiffs' representatives;

2. All 3.5″ and 5.25″ computer disks, CD–ROM's, or any other storage media, containing unlawful copies of Plaintiffs' software programs as described in paragraph 1 above;

3. All copies of manuals for Plaintiffs' software programs;

4. All licence documents and copies of such documents related to the copying of Plaintiffs' software programs and related copyrighted words as described in paragraph 1 above; [and]

5. All computers which have installed in their hard disk any unlicenced copy of Plaintiffs' copyrighted programs[.]

(**Id.** at 9–10).

Metro initially alleged in its original counterclaim that the plaintiffs wrongfully obtained the seizure order through the use of fraud because Morales Rivera's unsworn declaration is perjured. In support of this contention, Metro alleged that "[t]he investigator," presumably Morales Rivera, "perjured himself and issued a statement that does not conform to the real facts of the case and furthermore, constitute entrapment." (**Docket # 26, at 5**). Additionally, Metro averred as follows:

Plaintiffs employees (sic), investigators and/or contractors, who benefited (sic) economically from this transaction, entramped (sic) defendant by deceiving, representing, and inducing defendant to include in the purchased central processing unit (CPU) other programs that were not included in the program bundle available from the manufacturer.

Plaintiffs employees (sic), investigators, and/or contractors made specific representations to defendant that they were licenced users and therefore made false statements and pretenses in order to entramp (sic) Defendant.

On the basis of the false and incorrect statement issued by Plaintiffs' investigator, the Court was moved to issue an order on October 14, 1998[,] to seize, impound and photograph [certain items].

. . . .

Said order was served on appearing Defendant's premises and property immediately . . . through a much media publicized operation. This media operation incorrectly and falsely depicted appearing Defendant as a copyright and trademark infringer who prayed on unsuspecting clients and patrons.

. . . .

Furthermore, the negative publicity generated by the illegal search and seizure conducted by Plaintiff's (sic) based on self-serving and fabricated statements and over acts by Plaintiffs investigators, hired "help" and technicians caused and are intimately related to extreme prejudice and damage to appearing Defendant.

Plaintiff retained hired and/or selected the investigators and individuals who planned and executed the entrampment (sic) of Defendant.

(Id.). Metro also alleged that the plaintiffs impounded materials outside the scope of the seizure and impounding order. (Id.). Premised on the these allegations, Metro prayed for damages under article 1802 of the Civil Code of Puerto Rico, P.R.Laws Ann. tit. 31 § 5141 (1991) and 42 U.S.C. § 1983.

The plaintiffs countered by filing the instant motion contending, *inter alia,* that Metro's allegations fell short of establishing a damages claim under article 1802. In response, Metro amended its counterclaim "to more specifically allege specifics (sic) acts of negligence and or fault." (Docket # 48). These amendments, Metro contends, "are more than enough to withstand successfully plaintiffs' contention of lack of specificity." (Id.). Metro, however, voluntarily dismissed its § 1983 claim. In regard to its claim for damages under 1802, Metro's amended counterclaim additionally charges that the "plaintiffs' agents perjured themselves to deceive and illegally manipulate this Honorable Court into issuing the seizures and impounding order (sic) ...." (Docket # 47). Metro contends, moreover, that:

Metro [ ] at no time offered plaintiffs' agents to sell them the computer loaded with plaintiffs' protected programs, contrary to what was asserted under penalty of perjury by them.

It was plaintiffs' agents insistence, almost to the point of begging, and only after assuring [ ] Metro [ ] that they possessed valid licenses to the protected programs of defendant's which they wanted installed in their new computer that induced the latter to reluctantly do so.

It is a complete falsehood that plaintiffs' agents could observe [González] installing plaintiffs' legally-protected products from the front part of the store as

stated in thei[r] declaration made under penalty of perjury.

(Id.). Finally, Metro asserts that it does not "engage, as a matter of course, in the offering or sale of any of the plaintiffs' legally-protected products without the proper licenses, as evidenced by the fact that in none of the computer equipment which was seized by virtue of the court order illegally obtained by the plaintiffs through false testimony, were these products found to have been illegally installed." (Id.).

## Applicable Law/Analysis

 The Supreme Court of Puerto Rico has consistently held that an action for malicious prosecution based on a prior civil suit generally does not lie under article 1802 of the Puerto Rico Civil Code. *See, e.g., Gimenez Alvarez v. Silen Maldonado,* 1992 WL 754904, 131 D.P.R. 91, 96 (1992); *Commonwealth Loan Corp. v. Garcia Montanez,* 1968 WL 17164, 96 D.P.R. 773, 774 (1968); *Diaz v. Distribuidores RCA Victor,* 1934 WL 4665, 47 D.P.R. 562, 564 (1934). The Court has recognized, however, that article 1802 may adequately support an action for malicious prosecution based on a prior civil action in certain extreme circumstances, when the facts of the case reveal something more than mere negligence. *See Gimenez Alvarez,* 1992 WL 754904, 131 D.P.R. at 96. *See also Reyes–Cardona v. J.C. Penney & Co., Inc.,* 694 F.2d 894, 897 (1st Cir.1982) (noting that tort actions bases on a prior civil suit generally require a showing of recklessness, bad faith, intent to cause harm, gross error, abuse of the right to bring a suit, or the like). To establish a prima facie case of malicious prosecution based on the prior bringing of a civil suit the plaintiff must allege (1) that a civil action was initiated by, or by direction of, the defendant, (2) maliciously and without probable cause, (3) that the litigation terminated in the plaintiff's favor, and (4) that the plaintiff suffered damages resulting from the litigation. *See Gimenez Alvarez,* 1992 WL 754904, 131 D.P.R. at 96; *Abreu–Guzman*

*v. Ford,* 69 F.Supp.2d 274, 285 (D.P.R. 1999); *Boschette v. Buck,* 916 F.Supp. 91, 100 (D.P.R.1996). Because no prior civil suit has terminated in its favor, Metro has failed to state a colorable claim of malicious prosecution under article 1802. *See Boschette,* 916 F.Supp. at 100. Accordingly, Metro's counterclaim, to the extent that it is framed as an action for malicious prosecution under article 1802, should be dismissed.

In its opposition to the instant motion, Metro further argues that its counterclaim may also lie under article 1802 pursuant to the doctrine of abuse of process. (**Docket # 18**). Contrary to malicious prosecution, which "is the appropriate cause of action for challenging the whole of a lawsuit," abuse of process "covers the allegedly improper use of individual legal procedures *after* a suit has been filed properly." *Simon v. Navon,* 71 F.3d 9, 15 (1st Cir.1995). Therefore, we address Metro's allegations that plaintiffs obtained the seizure and impounding order by presenting false or perjured statements to the court as a claim under the doctrine of abuse of process.

It is not altogether clear whether article 1802 of the Civil Code of Puerto Rico supports a general cause of action for abuse of process in its common-law sense, that is: "the use of a legal process to accomplish a purpose for which it was not designed." *Boschette,* 916 F.Supp. at 99. *See also Abreu–Guzman,* 69 F.Supp.2d at 284. Notwithstanding, assuming that article 1802 does support a cause of action for abuse of process, some judges in this district have applied the general requisite elements for such a claim under common law in testing the sufficiency of a claimant's allegations. *See Abreu–Guzman,* 69 F.Supp.2d at 284–85 (Dominguez, J.); *Boschette,* 916 F.Supp. at 99 (Pieras, J.). We find this approach adequate and thus we use it in this case.

▆▆▆ "The two basic elements of abuse of process are a bad motive, and the use of a legal process for an improper, collateral objective." *Simon,* 71 F.3d at 15. "When abuse of process is based on conduct subsequent to initiation of the lawsuit, the requirement of an 'act' of abuse typically would be satisfied by showing use of the individual legal process in an improper manner." *Id.* at 15 n. 6 (collecting cases). Requesting an ex parte order for seizure and impoundment of copyright-infringing articles is not an improper act. To the contrary, is it one of the remedies specifically provided for in the Copyright Act of 1976 and the Copyright Practice Rules. *See, e.g.,* 17 U.S.C. § 503(a) ("At any time while an action under this title is pending, the court may order the impounding ... of all copies ... claimed to have been made or used in violation of the copyright owner's exclusive rights...."). Furthermore, Metro does not allege that the plaintiffs used the seizure and impounding order for "an improper, collateral objective," *Simon,* 71 F.3d at 15, or in an otherwise "improper manner." *Id.* at 15 n. 6. Procuring an order for seizure and impoundment under the Copyright Act does not constitute an improper use of a legal procedure. Therefore, Metro has failed to establish the second element of a cause of action for abuse of process.

Metro avers in its counterclaim that in executing the seizure and impounding order, the plaintiffs went beyond the scope of the order by seizing, impounding and photographing articles bearing no relation at all with this action, and of which some consisted of "personal property, confidential information and business secrets and documents." (**Docket # 47**). While in some cases the use of a similar order for the purpose of obtaining a tactical advantage in the underlying infringement action and to disrupt the alleged infringer's business for competitive reasons has been determined an ulterior or bad motive, *see Skierkewiecz v. Gonzalez,* 711 F.Supp. 931, 935 (N.D.Ill.1989) (involving an ex parte seizure order pursuant to the Lanham Act, 15 U.S.C. § 1116(d)(11)), Metro does not allege that this is such a case, thereby also failing to establish the first element of an

abuse of process claim. Having Metro failed to establish a colorable claim of abuse of process, its counterclaim against the plaintiffs should be dismissed.

 In a final effort to fathom a viable theory which would entitle Metro to relief, the Court shall consider whether Metro has asserted a prima facie case of fraud. "In order to prove fraud under Puerto Rico law, a plaintiff must establish: (1) that a false representation was made; (2) that the plaintiff reasonably and foreseeably relied thereon; (3) that the plaintiff was injured by his reliance; and (4) that the defendant intended to defraud the plaintiff." *Wadsworth, Inc. v. Schwarz–Nin*, 951 F.Supp. 314, 323 (D.P.R.1996). It should be clear, however, that to the extent that it is premised on the allegation that plaintiffs obtained the seizure and impounding order by presenting false or perjured statements to the Court, Metro's purported claim of fraud should be dismissed because, if even taking the supporting allegation as true, such allegation would only establish fraud on the Court, not the requisite reliance on the part of Metro.

The only averments which could be arguably construed, albeit very liberally, as an allegation of fraud are contained in the following paragraphs in Metro's counterclaim:

> Plaintiffs employees (sic), investigators and/or contractors, who benefited (sic) economically from this transaction, entramped (sic) defendant by deceiving, representing, and inducing defendant to include in the purchased central processing unit (CPU) other programs that

were not included in the program bundle available from the manufacturer.

> Plaintiffs employees (sic), investigators, and/or contractors made specific representations to defendant that they were licenced users and therefore made false statements and pretenses in order to entramp (sic) Defendant.
>
> . . . .
>
> It was plaintiffs' agents insistence (sic), almost to the point of begging, and only after assuring The Metro Defendants that they possessed valid licenses to the protected programs of defendant's which they wanted installed in their new computer that induced the latter to reluctantly do so.

(**Docket # 47**). These averments, even assuming, *arguendo*, that they meet the applicable pleading standard,[2] are irrelevant under the circumstances of this case.

The plaintiffs do not charge Metro with selling copies of their software to unauthorized users, but with selling a computer loaded with illegal copies of their software, thereby infringing their copyrights. It is thus immaterial to the plaintiffs' action that plaintiffs' investigator led Metro to believe that he was licensed to use the software, because Metro was not authorized to copy it in the first place. Proper licensing to use the software would not have made Metro's illegal reproduction of the plaintiffs' software legal. Therefore, any injury that Metro may have suffered in relation to the seizure and impounding order was caused by Metro's allegedly infringing conduct, not by the investigator's purported misrepresentations. Perhaps this is why Metro has no problem in admitting that the programs loaded into the

---

2. *Rule 9(b) of the Federal Rules of Civil Procedure* "imposes a heightened pleading requirement for allegations of fraud in order to give notice to the defendants of the plaintiffs' claim...." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir.1996). This standard "requires specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *Id.* Moreover, " 'mere allegations of fraud ...,

averments to conditions of the mind, or referral to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated.' " *Id.* (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985)). Because the Court finds that Metro's assertions, even if construed as alleging fraud, are unavailing under the circumstances of this case, it is not necessary to decide whether such assertions meet Rule 9's heightened pleading standard.

computer it sold to the plaintiffs' investigator were "found to have been illegally installed." (**Docket # 47**). Accordingly, Metro's purported claim of fraud should also be dismissed.

For the foregoing reasons, the Court hereby **GRANTS** the plaintiffs' motion (**Docket # 37**), and **DISMISSES** Metro's amended counterclaim (**Docket # 47**).

**SO ORDERED.**