# United States Court of Appeals

## For the First Circuit

No. 02-2570

GALLO MOTOR CENTER, INC. d/b/a GALLO MAZDA,

Plaintiff, Appellant,

v.

MAZDA MOTOR OF AMERICA, INC.,
d/b/a MAZDA NORTH AMERICAN OPERATIONS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lipez, Circuit Judge,

Porfilio,* Senior Circuit Judge,

and Howard, Circuit Judge.

Stephanie A. Bray, with whom Richard B. McNamara, Gregory A.
Holmes, Elizabeth M. Leonard and Wiggin & Nourie was on brief, for
appellant.
John R. Skelton, William F. Benson and Bingham McCutchen LLP
was on brief, for appellee.

October 16, 2003

_____
* Of the Tenth Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  An automobile manufacturer upset one of its existing franchisees when it decided to open a new dealership near the existing franchise.  The franchisee brought a diversity action, alleging that the manufacturer's actions violated state law.  Following a bench trial, the district court entered judgment for the manufacturer.  The franchisee now appeals.  We consider whether the district court erred in either its evidentiary admissions or factual findings and, discerning no error, affirm the court's judgment.

## I.

Plaintiff-appellant Gallo Motor Corporation ("Gallo") became a dealer for defendant-appellee Mazda Motor of America, Inc. ("Mazda") in 1994, when Gallo acquired an existing Mazda dealership on Shrewsbury Street in Worcester, Massachusetts.  Gallo management decided to purchase the franchise despite its awareness of other Mazda dealers in the area.

Like all new Mazda franchisees, Gallo was assigned a specific geographic area called a Statistical Observation Area ("SOA").  Mazda uses the SOA to monitor its dealers' performances.  By comparing new vehicle registrations in each SOA with industry-wide benchmarks (such as Mazda's national and regional market shares), Mazda is able to determine whether sales in a particular SOA are above or below average.  Gallo's assigned SOA encompassed all of Worcester and neighboring Shrewsbury, Massachusetts.

At the time Gallo purchased the franchise, Mazda's sales in the Worcester-Shrewsbury SOA were below the national and regional averages. Because Mazda believed that the poor location of the Shrewsbury Street dealership (in Worcester) was at least partially to blame for the substandard sales, it conditioned its approval of the Gallo franchise on Gallo's agreement to relocate the dealership from Shrewsbury Street to Gold Star Boulevard (also in Worcester). Gallo agreed to an eventual relocation.

In 1997, approximately three years after Gallo began operating the Shrewsbury Street dealership but prior to its relocation, Mazda commissioned market studies to evaluate more than 80 of its metropolitan market areas throughout the country. These studies were part of a "dealer revitalization program," which was designed both to eliminate dealers with poor performance records and to maximize the efficiencies of the remaining dealerships.

Based on market data from 1994 through 1997, the studies revealed that the greater Worcester area, which encompasses Gallo's Worcester-Shrewsbury SOA as well as the neighboring Westborough SOA, was not performing at an optimal level. At the time of the studies, this area contained three dealerships: Gallo, North End, and Roy Rioux. A report accompanying the studies cautioned that, while three dealerships were sufficient for the area, all three dealerships needed to achieve superior sales and service records if

Mazda was to achieve its expected market share in the greater Worcester area.

In 1998, the number of Mazda dealerships in the greater Worcester area decreased from three to two when Roy Rioux closed its doors.  Located on Route 9 in Westborough, Massachusetts, the former Rioux dealership was approximately 7.6 miles away from Gallo's Shrewsbury Street facility in Worcester.  Unable to find an acceptable buyer for the Rioux facility, Mazda quickly began searching for a new dealership to service the Westborough area.

After considering a number of factors, including the 1997 greater Worcester area market study, Mazda's management determined that a new dealership on Route 9 would lead to greater market penetration in the Westborough SOA.  Accordingly, in late 1998, Mazda entered into an agreement with Ford Motor Company to establish a joint Lincoln-Mercury/Mazda dealership ("MetroWest") on Route 9 in Shrewsbury, just over the Westborough town line.  Meanwhile, in March 1999, Gallo relocated from Shrewsbury Street to Gold Star Boulevard in Worcester pursuant to its franchising agreement with Mazda.

On August 16, 1999, three months after Gallo's move, Mazda notified Gallo by certified mail of its intention to establish a new dealership "at the Southwest corner of Route 9 and Walnut Street in Westborough, Massachusetts" (emphasis added). Although the letter's description provided an accurate street

address, it incorrectly identified the new dealership's site as Westborough instead of Shrewsbury.  Based on this defective letter, Gallo management assumed that the new dealership was effectively replacing the former Rioux dealership in Westborough.  Accordingly, it neither objected nor inquired further.

With no pending protests, Mazda and Ford proceeded with their plans to establish the MetroWest dealership.  At completion, the $3.8 million facility –- located approximately 6.5 miles away from Gallo's Gold Star Boulevard dealership in Worcester –- was entirely Ford-owned.

In March 2001, just a few months prior to MetroWest's grand opening, Gallo management discovered that the joint dealership was located in Shrewsbury -- not Westborough. Management immediately contacted Mazda's Regional General Manager to express concern.  On June 21, 2001, Gallo's counsel sent Mazda a letter complaining about both the establishment of the MetroWest dealership and Mazda's failure to provide Gallo with the notice required by Massachusetts law.  On July 13, 2001, Mazda's counsel responded with a corrected notice letter, which confirmed Mazda's intention to proceed with the MetroWest dealership.

Gallo thereafter filed a diversity action in federal district court, alleging violations of Massachusetts' so-called "Dealer's Bill of Rights."  See Mass. Gen. Laws ch. 93(B) (amended 2002).  Specifically, Gallo claimed that Mazda's MetroWest decision

was arbitrary and that Mazda had failed to provide adequate notice

of its decision.  The pertinent text of the statute, as it existed

at the time of trial, is reproduced below.

> [It is a violation for a manufacturer] arbitrarily and without notice to existing franchisees . . . to grant or enter into a franchise or selling agreement to or with an additional franchisee who intends or would be required by such franchise selling agreement to conduct its dealership operations from a place of business situated within the relevant market area of an existing franchisee . . . .
>
> ...
>
> Any manufacturer . . . which intends to grant or enter into an additional franchise or selling agreement, shall, at least sixty days prior to granting such franchise or entering into such agreement, give written notice of its intention to do so to each motor vehicle dealer with a franchise or selling agreement covering the same line make within a twenty mile radius of the location where the business of the proposed franchise will be located. Such notice shall state the date on or after which such proposed franchise shall be granted or entered into.
>
> ...
>
> In determining whether such proposed appointment is arbitrary, the court shall consider all pertinent circumstances.  These may include but are not limited to: [a list of eight lengthy statutory factors].[1]

---

[1]As summarized by the district court, these factors include "(i) the economic justification for the new franchise; (ii) the record of the objecting dealer, and other dealers in the area, in exploiting the relevant market; (iii) the investment in their franchises of the objecting dealer and other dealers in the relevant market area; (iv) the permanency of the investment of such dealers in the relevant market area; (v) whether the proposed dealership serves the public interest; (vi) whether such dealers provide adequate competition and convenient customer care; (vii) whether such dealers offer satisfactory facilities, equipment,

Mass. Gen. Laws ch. 93(B), § 4(3)(l) (amended 2002).

During the five-day bench trial, Gallo sought to prove the arbitrariness of Mazda's decision by arguing, <u>inter alia</u>, the presence/absence of the statutory factors. Gallo also asserted that Mazda's decision was influenced more by Ford's participation in the MetroWest facility -- in particular, Ford's financing -- than by any rational weighing of the pros and cons.

Unconvinced, the district court entered judgment for Mazda. <u>See</u> <u>Gallo Motor Ctr. Corp.</u>, 204 F. Supp. 2d at 150, 156. After considering "all pertinent circumstances," <u>see</u> <u>id.</u> at 151 (quoting Mass. Gen. Laws ch. 93(B), § 4(3)(l) (amended 2002)), including several of the eight statutory factors, the court found that "Gallo has not sustained its burden of demonstrating [by a preponderance of the evidence] that Mazda's establishment of the MetroWest dealership is arbitrary[;] [t]o the contrary, Mazda's new dealership promotes competition which, in turn, benefits the public interest." <u>Id.</u> at 156. Regarding Gallo's claim that Mazda provided inadequate notice of its MetroWest decision, the court found that "[although] the notice given by Mazda on August 16, 1999 was defective and inadequate[,] [i]ts subsequent letter of July 13,

---

vehicle parts and qualified personnel; and (viii) whether the establishment of an additional franchise would increase competition and therefore be in the public interest." <u>Gallo Motor Ctr. Corp.</u> v. <u>Mazda Motor of Am., Inc.</u>, 204 F. Supp. 2d 144, 151 (D. Mass. 2002) (citing Mass. Gen Laws ch. 93(B), § 4(3)(l) (amended 2002)).

2001 was . . . effective statutory notice pursuant to Chapter 93B." Id. at 150.

This appeal followed.

## II.

Essentially, we are presented with two broad questions: (1) whether the district court improperly admitted and considered certain evidence; and (2) whether, as a result of improperly weighing the evidence, the district court erred in its factual findings.

Given these separate questions, two standards of review apply.[2]  First, we review a district court's decision to admit evidence for abuse of discretion.  See Larch v. Mansfield Mun. Elec. Dept., 272 F.3d 63, 72 (1st Cir. 2001); see also United States v. Davis, 261 F.3d 1, 42 (1st Cir. 2001) ("A trial court enjoys considerable discretion in connection with the admission or exclusion of evidence.").  Second, we review findings of fact for clear error.  See Fed. R. Civ. P. 52(a); Persson v. Scotia Prince Cruises, Ltd., 330 F.3d 28, 31 (1st Cir. 2003).  Under the clear-error standard, "we will give . . . [factual] findings effect unless, after carefully reading the record and according due deference to the trial court, we form a strong, unyielding belief

---

[2]To the extent that answering these questions first requires an interpretation of the relevant statute, we shall provide a de novo reading.  See Blockel v. J.C. Penney Co., Inc., 337 F.3d 17, 29 (1st Cir. 2003).

that a mistake has been made." <u>Windsor Mount Joy Mut. Ins. Co.</u> v. <u>Giragosian</u>, 57 F.3d 50, 53 (1st Cir. 1995) (citation and internal quotation marks omitted).

### A. **Evidentiary Admissions**

Gallo contends that the district court improperly admitted and considered (1) Mazda's 1997 market study, (2) a report authored in 2002 by a Mazda expert, and (3) evidence of Gallo management's state of mind. We find no abuse of discretion.

### (1) The 1997 Market Study

According to Gallo, "[t]he plain language of [Mass. Gen. Laws ch.] 93(B), § 4(3)(l) renders Mazda's 1997 . . . market study obsolete and unworthy of consideration." For support, Gallo looks to one of the eight <u>non-exhaustive</u> statutory factors that a court may consider when determining arbitrariness:

> the retail sales and service business transacted by the . . . dealers with a place of business in the market area to be served by the additional franchisee during the <u>three year period</u> immediately preceding [the notice required by this statute].

Mass. Gen. Laws ch. 93(B), § 4(3)(l)(ii) (emphasis added). Because the 1997 study was based on data that existed outside this three-

year window,[3] Gallo argues that it should have been excluded as irrelevant.

Gallo's argument misses the mark.  As the district court correctly noted, the eight statutory factors are neither exhaustive nor definitive.  We need not even resort to case law for support; the statute is unambiguous.  "In determining whether [the establishment of the new dealership] is arbitrary, the court shall consider <u>all pertinent circumstances</u>.  These may include but are <u>not limited to</u> [the eight factors]."  <u>Id.</u> § 4(3)(l) (emphases added).  So while we agree with Gallo that the statutory language is "plain," we disagree with Gallo's interpretation of it.

The statutory language is sufficiently broad to permit the admission of the 1997 market study.  "All pertinent circumstances" means all pertinent circumstances.  That a particular piece of evidence does not fall within the purview of a particular factor in a non-exhaustive statutory list is not a sound basis for objecting to its admissibility.  Although Gallo did not receive its formal statutory notice until 2001, Mazda had made its MetroWest decision two years earlier, as evidenced by the defective notice letter dated August 16, 1999.  Mazda's decision was partially based on the 1997 study -- a major market study

---

[3]As discussed above, the district court held that, while Mazda's initial notice on August 16, 1999, was defective, effective notice was given on July 13, 2001.  Therefore, for purposes of Gallo's argument, the critical dates are July 13, 1998 through July 13, 2001.

commissioned for the purpose of evaluating Mazda's businesses and business opportunities. The results of this study are not only "pertinent" to an arbitrariness inquiry, they are important. Accordingly, the court did not abuse its broad discretion in determining that the 1997 study was relevant to an arbitrariness inquiry. See United States v. Brandon, 17 F.3d 409, 444 (1st Cir. 1994) (noting that the district court has broad discretion in making relevancy determinations).

**(2) The 2002 expert report**

Next, Gallo asserts that Mazda's 2002 expert report was an "after-the-fact justification" for the MetroWest facility that should have been excluded.[4] For support, Gallo cites two cases, each of which involves a lawsuit that closely parallels this one. See Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc., 440 N.E.2d 29 (Mass. App. Ct. 1982); Richard Lundgren, Inc. v. Am. Honda Motor Co., Inc., 1994 WL 879478 (Mass. Super. 1994).

Neither case controls. In both cases, the court found arbitrariness despite the assembly of after-the-fact market data -- not because of it. In Ricky Smith, the court noted that the factfinder "could . . . consider the absence of careful consideration or relevant data at the time the [franchising] appointment was made as evidence that the . . . franchise was

_____

[4]The report concluded, inter alia, that the addition of the MetroWest dealership was justified.

-11-

arbitrarily granted, despite [the manufacturer's] assembly, after the fact, of information which tended to support its actions." 440 N.E.2d at 43 (emphases added). Similarly, in Richard Lundgren, the court found that, while witnesses for the manufacturer "have strived diligently to assemble after-the-fact market data in an attempt to support its action, . . . the intended creation of a new dealership . . . was not based on any careful consideration of relevant market data at the time, and was hence arbitrary." 1994 WL 879478, at *5 (emphasis added). Neither case held that after-the-fact data must be excluded or that a manufacturer must conduct a contemporaneous market study.

Here, the district court considered several pieces of evidence, most of which involved pre-MetroWest data.[5] Mazda, of course, could not have based its 1999 MetroWest decision on the 2002 expert report. Such a report, then, merely serves as additional relevant evidence supporting Mazda's decision –- a decision that was based on "careful consideration of relevant market data at the time." See id. An after-the-fact study is not per se irrelevant to the court's analysis of arbitrariness because, as here, it can provide an account of the "pertinent circumstances" that the court is statutorily required to consider. Accordingly,

_____

[5] Mazda based its decision on, inter alia, the 1997 market study, the closure of the Rioux dealership, and the need to improve its market share.

-12-

the district court did not abuse its discretion in admitting this expert report.

**(3) The State-Of-Mind Evidence**

In its final attack on the admissibility of evidence, Gallo asserts that the district court improperly admitted evidence of Gallo management's "state of mind." At issue is the following statement by the court:

> [Gallo] has consistently voiced no objection to the introduction of a dealership in Westborough, the Town in which the Roy Rioux dealership was located, because it is sufficiently removed from [the Gallo] dealership [so as] to pose little competitive threat. . . . Notwithstanding the perceived difference between Shrewsbury and Westborough, [management's] lack of concern about a Westborough competitor seriously undercuts [its] claim that Mazda's decision to establish MetroWest was arbitrary.

Gallo, 204 F. Supp. 2d at 155.

According to Gallo, the "all pertinent circumstances" language in the statute "does not extend to evidence which is directly contrary to the statute's intent." Seeking de novo review, Gallo argues that, because the eight statutory factors emphasize public interest concerns and objective evidence, evidence as to management's state of mind is irrelevant "to the objective examination of the benefit or detriment that the new dealership will pose to the consuming public."

We are not convinced. As discussed above, the broad language in the statute permits a court to consider a wide range of factors -- public and private, objective and subjective, statutory and non-statutory -- when making its determination of arbitrariness. Cf. Ricky Smith, 440 N.E.2d at 43 (noting that, given the language of Mass. Gen. Laws ch. 93(B), the lower court "could have properly considered [the manufacturer's] conduct prior to [the new dealership's] appointment as manifesting indifference to the statute and to the impact that the new dealer would have on existing franchisees").

In failing to object to the proposed Westborough site (as erroneously noted in the 1999 notice letter), Gallo management undermined its subsequent position that MetroWest's actual Shrewsbury location was arbitrary. See Gallo, 204 F. Supp. 2d at 155. This evidence, itself a "pertinent circumstance," is further supported by several other "pertinent circumstances": (1) the close proximity of MetroWest to the Westborough border (less than one-half mile), id.; (2) the fact that MetroWest's actual Shrewsbury location is only one mile closer to Gallo's Gold Star dealership than the former Rioux dealership was to Gallo's initial Shrewsbury Street dealership, id.; and (3) the testimony of Gallo management that, in its opinion, the greater Worcester market area was not "overdealered" when it purchased the Shrewsbury Street franchise (despite the presence of the Rioux dealership). Given all these

-14-

"pertinent circumstances," the district court did not abuse its discretion when it considered relevant evidence of Gallo management's failure to object.

### B. __Factual Findings__

Gallo next contends that the district court (1) improperly focused on evidence of Mazda's market share to the neglect of other statutory factors, (2) improperly assessed Gallo's performance in the Westborough market instead of the Worcester market, (3) improperly construed Gallo management's state of mind, and (4) improperly weighed Ford's participation in the MetroWest decision. We find no clear error.

### (1) The Market-Share Evidence

Gallo claims that the district court clearly erred when it "focus[ed] on Mazda's market share without [giving] sufficient consideration to other [statutory] factors." Arguing that the district court's findings were against the weight of the evidence, Gallo asserts that the district court gave too little weight to the "voluminous factual and expert evidence" regarding, inter alia, the adequacy of its facilities and the substantial amount and permanent nature of its investment.

We disagree. As the district court explained in its thorough opinion,

> [t]he factors constituting the calculus of arbitrariness are neither exhaustive nor definitive. The statute pointedly directs a court to consider all pertinent circumstances.

-15-

> By implication, courts need not perform a mechanical analysis of all the elements that may have bearing upon whether the establishment of a proposed dealership is arbitrary. Common sense, experience and expert opinion may properly serve as guideposts in th[e] [c]ourt's arbitrariness analysis.

Gallo, 204 F. Supp. 2d at 151 (internal citation omitted). Further, as this Court has explained,

> in a jury-waived case, appellate courts cannot presume to decide factual issues anew. . . . If the district court's account of the evidence is plausible in light of the record reviewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as trier of fact, it would have weighed the evidence differently.

Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 152 (1st Cir. 1990) (internal citation omitted). Here, because the market-share statistics were reliable and telling indicators of Mazda's below-average performance in the region, we are not at all convinced that we even would have weighed the evidence differently. Accordingly, we discern no clear error.

**(2) The Assessment of Gallo's Performance**

In its written opinion, the district court stated that the "thorny question is . . . whether Mazda's existing dealership network, without the MetroWest site, adequately serves the Westborough area . . . ." Gallo, 204 F. Supp. 2d at 154 (emphasis added). Gallo argues on appeal that, because the new MetroWest facility was established to serve the Worcester market, the statute

-16-

requires the court to evaluate the arbitrariness of the MetroWest decision in terms of whether or not Gallo and other Mazda dealers were adequately serving the Worcester market -- not the "Westborough area." For support, Gallo notes that five of the eight statutory factors refer to "the market area to be served by the additional franchisee." <u>See</u> Mass. Gen. Laws ch. 93(B), § 4(3)(l)(ii)-(iv), (vi)-(vii). Further, Gallo seeks <u>de novo</u> review of this particular question "since the interpretation of [Chapter 93B] is an issue of law" and "the plain language of the statute does not contemplate or sanction this [']thorny question[']."

Irrespective of the standard of review that ought to apply, we discern no basis for reversing because of this finding. Given Gallo's previous position on the relevant market, which it now abandons, our finding should come as no surprise. At trial, Gallo's own expert testified that the area to be served by the MetroWest dealership was the combined SOAs of Gallo <u>and</u> the "add-point," which includes Westborough. Moreover, Gallo's expert not only testified that the Worcester and Westborough markets were linked historically, he also presented an analysis based on an opinion that the two markets ought to be considered together. While not dispositive, this evidence is telling because it indicates that, at least at trial, Gallo believed an accurate

assessment of its performance would require an inquiry into markets other than just Worcester.

The district court was thorough in its analysis; in determining arbitrariness, it considered Mazda's sales performance in <u>both</u> the Westborough and Worcester markets. <u>See</u> <u>Gallo</u>, 204 F. Supp. 2d at 152 ("Although experts continue to debate the proper performance benchmark, it is clear that Mazda's sales performance in the Worcester-Shrewsbury SOA was inadequate from 1998 to the present. Moreover, Mazda was not performing at expected levels in the [Westborough SOA]."). That the Westborough analysis was "the thorny question" indicates only that, for lack of a better phrase, one determination was "thorn[ier]" than the other.

**(3) The interpretation of Gallo management's state of mind**

Having anticipated that this Court might reject its argument as to the inadmissibility of state-of-mind evidence, Gallo invites us to accept its fallback position: "Even if [Gallo management's state of mind was] relevant, the [d]istrict [c]ourt misunderstood the testimony on this point." As indicated earlier, Gallo takes issue with the following statement:

> [Gallo] has consistently voiced no objection to the introduction of a dealership in Westborough, the Town in which the Roy Rioux dealership was located, because it is sufficiently removed from [the Gallo] dealership [so as] to pose little competitive threat. . . . Notwithstanding the perceived difference between Shrewsbury and Westborough, [management's] lack of

-18-

> concern about a Westborough competitor seriously undercuts [its] claim that Mazda's decision to establish MetroWest was arbitrary.

Gallo, 204 F. Supp. 2d at 155. Gallo posits that, contrary to the findings of the district court, an objection was not made because a new dealership in Westborough would have provided "enough space to compete equally."

Gallo's argument fails for two reasons. First and foremost, no discrepancy exists between the district court's findings and the position advocated by Gallo on appeal. Second, even if a discrepancy exists, there is no clear error. Given the evidence and the deferential standard of review, Gallo cannot establish reversible error in the court's refusal to accept that, while a MetroWest dealership on Route 9 in Westborough would be unobjectionable, a MetroWest dealership on Route 9 that is only one-half mile away from the Westborough town line makes all the difference in terms of competition.

## (4) Ford's Participation

In a final attempt to establish clear error, Gallo asserts that "the district court overlooked the participation of Ford Motor Company in the new dealership." According to Gallo, "[t]he absence from the [d]istrict [c]ourt's Memorandum of Decision of Ford's silent but ominous presence in this case is [evidence of] clear error in that it [shows that the district court] overlooked certain important, and undisputed, facts."

We reject Gallo's argument. Standing alone, the fact that a judicial opinion neglects to mention a particular piece of evidence is no proof that the court failed to consider it. "[I]t is the very essence of the trial court's function to choose from among the competing and conflicting inferences and conclusions that which it deems most reasonable." Evans v. United States, 319 F.2d 751, 755 (1st Cir. 1963) (citation omitted). The district court's careful opinion in this case gives us every reason to suppose that the court carefully weighed all the evidence before coming to its decision.

## III.

For the reasons stated above, the judgment of the district court is **affirmed**.