Rosaura **GONZALEZ–RUCCI,**
Plaintiff(s)

v.

**UNITED STATES IMMIGRATION and NATURALIZATION SERVICE, et al., Defendant(s).**

**Civil No. 99–2352(JAG).**

United States District Court,
D. Puerto Rico.

Nov. 1, 2006.

Carmen Eva Garcia–Cardenas, Lixandra Osorio–Felix, Nicolas Nogueras Law Offices, San Juan, PR, for Plaintiffs.

AUSA Isabel Munoz–Acosta, United States Attorney's Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Plaintiff, attorney Rosaura Gonzalez–Rucci ("the plaintiff"), filed suit against the United States Immigration and Naturalization Service ("INS") and several immigration officers,[1] pursuant to the Federal Tort Claims Act ("FTCA") and the *Bivens* doctrine.[2] The complaint asserts claims

---

**1.** In 2003, the relevant functions of the INS were transferred to the Department of Homeland Security in a reorganized Bureau of Immigration and Customs Enforcement. For simplicity and uniformity, the Court will continue to refer to INS.

**2.** *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

for malicious prosecution, abuse of process, false arrest and negligence. Specifically, the plaintiff alleges that because of her turning down the romantic advances of defendant INS officer Andres Nuñez, he and other INS officers used their official positions to destroy her law practice, to obtain warrants to search her home and office, to procure her arrest, and to secure a criminal indictment against her. The alleged harassment began in 1995; peaked with the plaintiff's indictment for various criminal offenses on September 26th, 1996; and continued for some months after her acquittal on February 6th, 1997.

On July 31st, 2002, this Court granted a motion to dismiss filed by the INS upon concluding that plaintiff's claims, although cognizable under both the FTCA and *Bivens,* were time-barred. (Docket No. 47). On reconsideration, the Court maintained its holding that the *Bivens* claim was barred, but agreed that the FTCA claims were timely. (Docket No. 54). Nonetheless, the Court still denied the plaintiff's Rule 60(b) motion, upon finding that the malicious prosecution and abuse of process claims failed to pass muster under Fed. R.Civ.P. 12(b)(6). *Id.* Plaintiff filed a Notice of Appeal on January 26th, 2004. (Docket No. 56).

On April 21st, 2005, the First Circuit affirmed the dismissal of the *Bivens* claims, but held that plaintiff's allegations were sufficient to state a cause of action for malicious prosecution and abuse of process against the government under the FTCA. *See Gonzalez Rucci v. U.S. Immigration and Naturalization Service,* 405 F.3d 45 (1st Cir.2005). Accordingly, the Circuit vacated and remanded as to the FTCA claims.

A pretrial conference was held before the undersigned on September 12th, 2005.

In said conference, the parties represented that they were still engaged in settlement negotiations, and agreed to advise the Court of any transaction by October 27th, 2005. (Docket No. 66). The parties did not comply with the deadline, and on December 5th, 2005, the Court issued an Order for the plaintiff to show cause why the case should not be dismissed for lack of prosecution. (Docket No. 67). On December 6th, 2005, the plaintiff filed a motion informing the Court that settlement negotiations were still ongoing. The Court noted the filing and extended the deadline for advising the Court of a settlement until January 9th, 2006. (Docket No. 69). Shortly thereafter, the parties informed that no settlement had been reached, and the Court proceeded to set the case for trial.[3]

A bench trial was held on February 6th and 7th, 2006. Plaintiff took the stand on the first and second days of trial. At the close of the plaintiff's case, the defendants moved for Judgment on Partial Findings under Fed.R.Civ.P. 52(c). The Court reserved its ruling on the motion. On the second day of trial, the INS called former INS agent Luis Reyes. Plaintiff requested leave to present a rebuttal witness, Maureen Rodriguez–Figueroa (INS), but the Court denied said request because plaintiff had not designated Rodriguez–Figueroa as a potential witness in the Proposed Pretrial Order. Instead, plaintiff's counsel proffered Ms. Rodriguez's testimony.

At the conclusion of the trial, the INS renewed its Rule 52(c) motion. The Court took the matter under advisement and ordered the parties to submit post-trial memoranda with proposed findings of fact and conclusions of law.

---

**3.** Plaintiff filed her motion on January 9th, 2006, the defendants filed theirs on January 25th, 2006. (Dockets No. 72 & 73).

## FINDINGS OF FACT

Having assessed the witnesses' credibility, and taking into account the documentary evidence, the parties' post trial briefs, and the stipulations in the pretrial order, the Court makes the following findings of fact:

1. The plaintiff began to work as an attorney in 1993, as an associate of attorney Samuel Medero. Plaintiff practiced immigration law in San Juan, Puerto Rico, including administrative practice before the Immigration and Naturalization Service of the United States. Around that time, she met Andres Nuñez, a long-time immigration officer who advised her on numerous aspects of her practice. For instance, Nuñez helped her prepare motions, and assisted her in filing before the INS. Moreover, Andres Nuñez would call the plaintiff at her home to discuss immigration cases.

2. In 1994, upon Nuñez's advice, the plaintiff left attorney Medero's law firm, and began to work as a solo practitioner.

3. In late 1994, Andres Nuñez tried to develop a personal relationship with the plaintiff and invited her out. Plaintiff accepted an invitation once, but she did not feel comfortable and rejected subsequent advances. After her rejecting Nuñez, she began to be treated differently at the INS Offices.

4. During the year 1995, plaintiff was forced to wait long hours to file documents at the INS.

5. In 1995, plaintiff complained to the INS District Director, James Walker, about Andres Nuñez and how she was being harassed at the INS Office. Walker requested that plaintiff put her complaints in writing, but she, after discussing the matter with her mother, decided not to file a written complaint.

6. On April 18th, 1996, after waiting for several hours to file some documents with the INS, plaintiff directly clocked-in her appointment letters without authorization.

7. Because of the unauthorized "clock-in incident," the plaintiff's attorney privileges at the INS were suspended for a period of six (6) months.

8. From May 22nd, 1996 through September 3rd, 1996, plaintiff wrote five (5) letters to Charles Kirk, INS District Director, complaining about the discriminatory treatment and harassment she was experiencing and, specifically, complaining about Information Supervisor Maritza Soto.

9. On August 21st, 1996, the plaintiff wrote a letter to the INS office in Washington, D.C., complaining about the discriminatory treatment afforded her at the INS office in Puerto Rico, and about Information Supervisor Maritza Soto. Plaintiff also complained about the sanctions imposed upon her by the District Director, Charles Kirk, because of the "clock-in incident."

10. On March 27th, 1997, all of plaintiff's complaints were answered by Thomas C. Leupp, Acting Regional Director in Vermont. Leupp informed the plaintiff that District Directors have full authority to choose how filings are conducted. Leupp also stated that the INS does not condone discriminatory treatment.

11. On September 3rd, 1996, plaintiff, through attorney Rafael Castro–Lang, sent a letter to INS District Director Charles Kirk advising him of a possible judicial action against him and Maritza Soto for discrimination.

12. Luis Reyes was a Special Agent for the INS from 1987 to 1998. Presently, he is a Border Patrol Agent.

13. Luis Reyes' immediate supervisor at the INS was special agent Roberto Ramos. Reyes and Andres Nuñez were

co-workers at the INS, but were not friends. Conversely, Andres Nuñez and Roberto Ramos were friends, and used to have lunch together at the Federal Office Building.

14. On or about November 2nd, 1995, Luis Reyes started an investigation on "sham marriages."[4] In connection with that investigation, Reyes interviewed at least five (5) Dominican aliens between the years 1995 and 1996, on suspicion of being involved in that illegal practice. These interviews led Reyes to conclude that plaintiff was aiding and abetting United States citizens and illegal Dominican aliens to enter into sham marriages. Specifically, that plaintiff coached the couples in order to guide them through the INS examination process, and prepared "coaching questions" to help them commit fraud.

15. Upon concluding his investigation in September 1996, Reyes presented the case to the United States Attorney's Office.

16. On September 18th, 1996, Special Agent Luis Reyes went before then Magistrate–Judge Aida Delgado with an Application and Affidavit for a Search Warrant of plaintiff's law offices and residence. Judge Delgado issued the search warrant, which was executed on that same day.

17. Among the documents seized by the federal agents was a questionnaire that contained the following advice to clients:

Be careful with medical plans and credit cards, or purchasing cards for any store such as Sears, Sams, J.C. Penney's, Pitusa, etc. If your spouse is not on that card as a beneficiary or user, *do not* take it to Immigration on the day of the interview, *DO NOT* say you have it, it is better to say that you do not have a medical plan, nor any credit card at all, there is no way the Immigration Service could know this.

18. On September 24th, 1996, a criminal complaint was filed against plaintiff Gonzalez–Rucci, Luis Torres and Violeta Fernandez. The criminal complaint was sworn by Luis Reyes and signed by Assistant U.S. Attorney Joseph Fratallone. On that same date, Magistrate–Judge J.A. Catellanos issued an arrest warrant against the plaintiff.

19. On October 9th, 1996, a Superseding Indictment was presented to the Grand Jury charging plaintiff with conspiracy to defraud the INS, to induce aliens to obtain permanent residence pursuant to "sham marriages," and having in her possession a coaching questionnaire designed to deceive and defraud the INS examiner. The Grand Jury returned a True Bill on that same date.

20. The criminal case against the plaintiff began on February 4th, 1997. *See* Criminal No. 96–270(HL). At the conclusion of all the evidence, the Court entered judgment of acquittal.

21. On December 13th, 1999, plaintiff filed this civil complaint against the United States of America, the INS, the Department of Justice, Andres Nuñez,

---

**4.** A "sham marriage" is one where a United States citizen marries an alien for the purpose of circumventing immigration laws. They have no intention to- and do not- live as husband and wife after the marriage ceremony. In most cases, the United States citizen receives monetary remuneration. In order to circumvent the immigration laws, the United States citizen files a "Petition for Alien Relative" on behalf of the alien spouse. The alien is then granted a temporary residence permit. The couple is eventually interviewed by an INS examiner. If the examiner is not convinced that theirs is a bonafide marriage, the Petition is denied and deportation proceedings are initiated against the alien. *See United States v. Bithoney*, 631 F.2d 1, 4 (1st Cir. 1980).

Charles Kirk, Myrna Pere, Roberto Ramos, Luis Reyes, Vivian Reyes, and Maritza Soto. (Docket No. 1).

22. On August 24th, 2000, the plaintiff was suspended from the practice of law by the Puerto Rico Supreme Court.[5] *In re Irizarry Vega & Gonzalez Rucci*, 151 D.P.R. 916 (2000). She was reinstated on July 6th, 2001. *In re Gonzalez Rucci*, 154 D.P.R. 641, 2001 WL 788092 (2001). Her suspension by the Puerto Rico Supreme Court resulted in her also being suspended from practicing at the INS.

## DISCUSSION

Based on the foregoing findings, the Court must now determine whether the plaintiff has proven her case of malicious prosecution and abuse of process under the FTCA. The First Circuit also ordered the Court to address the plaintiff's claims of negligence and false arrest. Plaintiff, however, did not argue those claims during trial, and failed to discuss them altogether in the Proposed Pretrial Order and in her post-trial brief. (Dockets No. 78 & 86, respectively). Hence, the Court must assume that plaintiff has waived them.

### 1. *Federal Tort Claims Act*

■ The FTCA authorizes private tort actions against the United States if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1). That is, under the FTCA, the United States waives sovereign immunity under circumstances where local law would make a private person liable in tort. *United States v. Olson*, 546 U.S. 43, 126 S.Ct. 510, 163 L.Ed.2d 306 (2005). Thus, Puerto Rico law provides the relevant standards for the substantive claims here at issue.

### A. *Malicious Prosecution Claim*

■ The tort of malicious prosecution consists of four elements: 1) that a criminal action was initiated and instigated by the defendants; 2) that the criminal action terminated in favor of plaintiff; 3) that defendants acted with malice and without probable cause; and 4) that plaintiff suffered damages. *Nogueras–Cartagena v. United States*, 172 F.Supp.2d 296 (D.P.R. 2001).

The First Circuit recognized in its Opinion of April 21st, 2005, that, generally, "a grand jury indictment definitely establishes probable cause." *Gonzalez Rucci*, 405 F.3d at 49. However, the appellate court noted that "courts have recognized an exception if law enforcement defendants wrongfully obtained the indictment by knowingly presenting false testimony to the grand jury," and held that plaintiff's allegations were sufficient, at the pleading stage, to rebut the presumption of probable cause established by the grand jury indictment. *Id.* Consequently, the First Circuit remanded with instructions to develop the record on this score.

■ After hearing the witnesses' testimony, and upon due consideration of the documentary evidence in the record, the Court reaffirms its finding that plaintiff fails to prove her malicious prosecution claim. The gist of plaintiff's claim is that because of her refusing the amorous advances of Andres Nuñez, he and other INS officers engaged in a harassment campaign that culminated in her being indicted. However, plaintiff failed to connect any illegal act by Andres Nuñez to the investi-

---

**5.** The plaintiff was suspended by the Puerto Rico Supreme Court for reasons not related to the matter at bar.

gation initiated by Luis Reyes in 1995, or produce evidence that the defendants wrongfully obtained the indictment by maliciously presenting false testimony to the grand jury. All plaintiff could prove in trial was that Luis Reyes' supervisor, Roberto Ramos, regularly had lunch with Andres Nuñez at the Federal Building's Cafeteria.

On the other hand, the evidence submitted by the defendants reveals that the investigation was conducted properly, and that the grand jury proceedings were not tainted by improper motive or illicit practices. The evidence before the Court demonstrates that Luis Reyes interviewed at least five (5) Dominican aliens between 1995 and 1996 on suspicion of having "sham marriages," and that the interviewees implicated the plaintiff in schemes to circumvent the immigration laws of the United States. This information led the United States Attorney to apply for a search warrant to enter the plaintiff's office and residence. The evidence gathered in the search by the federal agents was of such magnitude as to lead Magistrate–Judge J.A. Castellanos to issue an arrest warrant against the plaintiff. Moreover, the Court finds that the questionnaire in which the plaintiff advised her clients on how to proceed before the INS inspector is particularly damaging to her contentions here. The contents of said questionnaire—the authenticity of which is not challenged—certainly dissipate any doubt concerning the legitimacy of the criminal charges leveled against plaintiff.

In sum, the Court finds that plaintiff's has failed to prove that the defendants acted with malice and without probable cause. There is simply no evidence to support her allegations that Andres Nuñez maliciously intervened in the processes that culminated in her being indicted. Therefore, the malicious prosecution claim must fail. *See Nogueras–Cartagena,* 172

F.Supp.2d at 315 (citing *Gerstein v. Pugh,* 420 U.S. 103, 117 n. 19, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)(holding that "an indictment fair upon its face, and returned by a properly constituted grand jury, conclusively determines the existence of probable cause"). *Cf. Hartman v. Moore,* —— U.S. ——, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006)(holding that in a retaliatory-prosecution action under *Bivens,* the plaintiff must plead and show the absence of probable cause for pressing the underlying criminal charges).

### B. *Abuse of Process Claim*

Under Puerto Rico law, "[t]he two basics elements of abuse of process are a bad motive, and the use of a legal process for an improper, collateral objective." *Gonzalez Rucci,* 405 F.3d at 49; *Microsoft Corp. v. Computer Warehouse,* 83 F.Supp.2d 256 (D.P.R.2000). Contrary to malicious prosecution claims, which are generally directed to a legal action as a whole, abuse of process typically covers challenges to the legal action's procedural components (e.g. discovery mechanisms or subpoenas). *Nogueras–Cartagena,* 172 F.Supp.2d at 316.

On appeal, the First Circuit endorsed this Court's conclusion that only Andres Nuñez is specifically alleged to have had a bad motive. *Gonzalez Rucci,* 405 F.3d at 49. However, the appellate court found that this is not fatal to plaintiff's case inasmuch "as she alleges a host of wrongful acts committed by other defendants." *Id.,* at 50. The First Circuit further concluded that "while simply bringing a lawsuit may not be an abuse of process, obtaining search and arrest warrants by means of false testimony is a proper basis for a claim of abuse of process (at least for pleading purposes)." Accordingly, the First Circuit remanded for further proceedings.

After hearing the plaintiff's testimony, the Court finds that she did not meet her burden of showing that any procedural component of her criminal prosecution was influenced by a bad motive, or conducted with the purpose of attaining an improper collateral objective. As the Court concluded in the previous sub-section, plaintiff did not produce evidence that the defendants wrongfully obtained the indictment by maliciously presenting false testimony to the grand jury. Plaintiff also failed to prove that any aspect of the investigation against her was related to her refusing the romantic overtures of Andres Nuñez. Therefore, plaintiff's allegation of abuse of process cannot prosper.

## CONCLUSION

In light of the foregoing findings of fact and conclusions of law, the Court rules that plaintiff has failed to prove her claims of malicious prosecution and abuse of process under the FTCA. All plaintiff could provide in support of her contentions was her testimony, which the Court deems unsubstantiated and simply not credible. Consequently, she cannot be afforded any remedy under said statute. Judgment shall be entered **DISMISSING** the Complaint in its entirety.

IT IS SO ORDERED.