# United States Court of Appeals
## For the First Circuit

No. 07-1198

ROSAURA GONZÁLEZ-RUCCI,

Plaintiff, Appellant,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Selya, and Boudin,
Circuit Judges.

Julio C. Alejandro-Serrano, with whom Office of Nicolás Nogueras-Cartagena, was on brief for appellant.
Isabel Muñoz-Acosta, Assistant United States Attorney, with whom Julia M. Meconiates, Assistant United States Attorney, Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief for appellees.

August 21, 2008

**TORRUELLA**, **Circuit Judge**. Rosaura González-Rucci ("González"), an immigration lawyer, claims to have rejected the amorous advances of an Immigration and Naturalization Service ("INS") officer. Thereafter, the U.S. Attorney's Office investigated her on suspicion that she aided and abetted aliens entering into sham marriages for immigration purposes; she was indicted and acquitted. González then brought several Federal Tort Claims Act ("FTCA") claims -- including malicious prosecution and abuse of process -- against the INS[1] and a number of its officers (collectively, "Defendants"). González's theory was that the animosity generated by her rejection of the INS officer prompted the U.S. Attorney's Office to seek a sham indictment in retaliation. After a bench trial, the district court dismissed González's claims, a result she now appeals. After careful review, we affirm.

## I. Background

As this case comes to us following a bench trial, we recount the relevant facts as found by the district court, consistent with record support. Able Sales Co. v. Compañía de Azúcar de P.R., 406 F.3d 56, 59 (1st Cir. 2005); Bolduc v. United States, 402 F.3d 50, 52 (1st Cir. 2005); see also González-Rucci v.

---

[1] In 2003, the relevant functions of the INS were transferred to the Immigration and Customs Enforcement Section of the Department of Homeland Security, named as a successor to the former as a defendant in this case.

U.S. Immigration & Naturalization Serv., 460 F. Supp. 2d 307, 310-12 (D.P.R. 2006) ("González-Rucci II") (district court's factual findings).

González represented clients in cases before the immigration authorities in San Juan, Puerto Rico. She befriended an immigration officer named Andrés Núñez, but the two later fell out when she rejected his romantic overtures.[2] Thereafter, she began to be treated less favorably at the San Juan INS office. For example, she was made to wait many hours to file documents, was reprimanded for using a routing slip normally prepared by INS officials, was not sent timely notifications of her appointments with immigration officers, causing her to miss meetings, and was punished with suspension for failing to follow proper procedures in stamping documents. She filed several complaints with INS oversight officers complaining of this treatment, but no action was taken.

In the meantime, then-INS Special Agent Luis Reyes was investigating sham marriages involving Dominican aliens. Reyes's supervisor, Roberto Ramos, was a friend of Núñez's and often ate lunch with him. Reyes's investigation led him to suspect that

---

[2] According to González's testimony, at a certain point in their friendship Núñez asked her to go out dancing, and she told him that she already had a boyfriend, that she thought such an activity inappropriate because she and Núñez had a professional relationship, and that in any event Núñez was not her type. González testified that, from this point onward, Núñez was exceedingly spiteful toward her in all their dealings.

González was aiding and abetting U.S. citizens and undocumented Dominican aliens to enter into sham marriages so that the latter could avoid deportation or obtain other marriage benefits, and that she had prepared coaching questions to help them lie to the INS. Reyes presented his findings to the U.S. Attorney's Office, which obtained and executed search warrants on González's home and office and seized a number of documents. Among the seized documents was what the parties call the "coaching questionnaire," in which González advised clients as follows:

> Be careful with medical plans and credit cards, or purchasing cards for any store such as Sears, Sam[']s, J.C. Penney's, Pitusa, etc. If your spouse is not on that card as a beneficiary or user, do not take it to Immigration on the day of the interview, DO NOT say you have it, it is better to say that you do not have a medical plan, nor any credit card at all, there is no way the Immigration Service could know this.

A grand jury indicted González and two others for conspiracy to defraud the INS and other crimes, but the district court entered judgment of acquittal for González at the close of evidence.

González then sued the Defendants under the FTCA, 28 U.S.C. § 1346(b), and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging malicious prosecution and abuse of process.[3] Specifically, she averred that Núñez and his colleagues improperly used their

---

[3] González originally made two other claims that she did not ultimately pursue below and that are not at issue on appeal.

-4-

official positions to destroy her law practice, to obtain the search warrants, to procure her arrest, and to secure her indictment.

The district court dismissed the Bivens claims for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because they were untimely; it dismissed the malicious prosecution and abuse of process claims under Federal Rule of Civil Procedure 12(b)(6) because they failed to state a claim on which relief could be granted. On appeal, we affirmed the dismissal of the Bivens claims, González-Rucci v. U.S. Immigration & Naturalization Serv., 405 F.3d 45, 48 (1st Cir. 2005) ("González-Rucci I"), but reversed the dismissal of the malicious prosecution and abuse of process claims, holding that they were viable. Id. at 49-50.

On remand, the district court held a two-day bench trial. Only two witnesses testified: González, for herself, and Reyes, for the defense. Where relevant to the issues in this appeal, we discuss their testimony below. At the end of González's presentation of evidence, the Defendants moved for judgment on partial findings under Federal Rule of Civil Procedure 52(c); the court reserved judgment on the motion. When trial concluded, the court dismissed the malicious prosecution and abuse of process claims because González had failed to present sufficient credible evidence to sustain them. See generally González-Rucci II, 460 F.

Supp. 2d at 307. We discuss the court's reasoning below. González now appeals, asserting that the evidence was sufficient to support both claims.

## II. Discussion

### A. Standard of Review

Federal Rule of Civil Procedure 52 governs our review of a trial court's findings of fact following a bench trial: "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). We will deem a finding clearly erroneous only if, viewing the record in its entirety, we are left with a "'strong, unyielding belief that a mistake has been made.'" United States v. Jones, 523 F.3d 31, 36 (1st Cir. 2008) (quoting C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist., 513 F.3d 279, 285 (1st Cir. 2008)); accord Carr v. PMS Fishing Corp., 191 F.3d 1, 6 (1st Cir. 1999) (describing this standard of review as "forbidding" because it requires that the reviewing court have "an abiding conviction that the factfinder stumbled badly"). We accord plenary review to the district court's conclusions of law following a bench trial. See Anderson ex rel. Dowd v. City of Boston, 375 F.3d 71, 80 (1st Cir. 2004).

**B. Malicious Prosecution Claim**

In an FTCA case such as this one, we glean the applicable substantive law from the state (or commonwealth) where the alleged tort occurred -- here, Puerto Rico. Mitchell v. United States, 141 F.3d 8, 13 (1st Cir. 1998). A malicious prosecution claim under Puerto Rico law has four elements: (1) the defendant instituted a criminal action against the plaintiff; (2) the action was terminated in favor of the plaintiff; (3) the defendant acted with malice and without probable cause; and (4) the plaintiff suffered damages. González-Rucci I, 405 F.3d at 49 (citing Nogueras-Cartagena v. United States, 172 F. Supp. 2d 296, 315 (D.P.R. 2001)).

The Defendants do not dispute that González established the first two elements of her malicious prosecution claim, nor do they seem seriously to dispute the fourth. They do, however, challenge the existence of the third element: whether some or all of them acted with malice and pursued González's indictment without probable cause. González argues that the evidence presented at trial established this element. She testified about how she was singled out for harassment at the San Juan INS office following her rejection of Núñez. She also testified that none of the Dominican aliens the U.S. Attorney's office alleged to be her clients were, in fact, her clients. According to González, Reyes thus had no basis to conclude that she took part in a scheme to coach these

persons to enter into sham marriages, and he had no basis subsequently to seek her indictment. González argued before the district court, and reiterates to us, that the extreme animosity demonstrated toward her at the San Juan INS office, combined with Reyes's lack of any genuine justification for seeking her indictment and his supervisor Ramos's frequent lunches with Núñez, permits the reasonable inference that Reyes and the prosecutors who acted on his findings were motivated by malice in pursuing her prosecution.

The district court was unpersuaded by this theory and found, on its assessment of the testimony of González and Reyes and other evidence, that González had not satisfied the third element of her malicious prosecution claim. Specifically, the court found that she had failed to prove any link between Reyes's investigation and actions by Núñez or other relevant INS officers who may have had a vendetta against her, and that Ramos and Núñez's lunches together did not establish such a link. On the other hand, the court credited Reyes's testimony that, before seeking González's indictment, he interviewed several persons suspected of entering into sham marriages, and that these persons implicated González in coaching them to circumvent the immigration laws. The court believed Reyes's assertion that it was this information, subsequently provided by Reyes to the U.S. Attorney's Office, that led the latter to apply for the search warrants. The court then

found that the evidence gathered in these searches -- especially the coaching questionnaire[4] -- established adequate probable cause for believing González had committed a crime (a conclusion independently reached by the magistrate who issued the search warrants, the different magistrate who issued the arrest warrant, and the members of the grand jury). See González-Rucci II, 460 F. Supp. 2d at 313.

Our review of the record reveals ample support for the court's factual findings. Reyes testified that he interviewed a number of Dominican aliens or their U.S. citizen spouses, and that these persons described advice González gave them on various aspects of entering into and maintaining sham marriages -- such as, for example, registering a child fathered by a Dominican as having been fathered by a U.S. citizen husband, or divorcing a Dominican husband and remarrying an American one to avoid deportation. Reyes also testified that, although he and Núñez both worked at the INS, they were not personal friends, and he did not recall Núñez ever discussing any aspect of González's case with him or forwarding him any information about her. Reyes testified repeatedly and without equivocation that no one -- not Núñez, Ramos, or any other INS officer -- directed him to seek out information that could be used against González, or to harass her in any way.

---

[4] With respect to the coaching questionnaire, the court remarked that it "certainly dissipate[d] any doubt concerning the legitimacy of the criminal charges leveled against plaintiff."

The district court, as the trier of fact, was entitled to credit Reyes's testimony as a true account of what actually happened. See Carr, 191 F.3d at 7 ("We have said with a regularity bordering on the monotonous that, in a bench trial, credibility calls are for the trier . . . .") (citations omitted). While the testimony is not without a few minor inconsistencies -- seemingly due in large part to Reyes's inability to remember certain details about events that transpired more than ten years prior -- none of these is anywhere near serious enough to render the district court's credibility assessment an abuse of discretion. Cf., e.g., United States v. Jones, 187 F.3d 210, 214-16 (1st Cir. 1999) (no clear error in crediting witnesses' testimony from suppression hearing despite several minor inconsistencies); Gallo Motor Ctr., Inc. v. Mazda Motor of Am., Inc., 347 F.3d 20, 28-29 (1st Cir. 2003) (similar).

Furthermore, we find nothing in the record that would lead us to disturb the district court's conclusion that González failed to connect Núñez (or other INS colleagues that may have borne animosity towards her) with Reyes and his investigation, through Ramos or otherwise. Unlike a decision on a motion for summary judgment, after a bench trial the district court is not obliged to believe the nonmovant's sworn version of the facts, see, e.g., Velázquez-García v. Horizon Lines of P.R., Inc., 473 F.3d 11, 18 (1st Cir. 2007), or to draw inferences in her favor, see, e.g.,

Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 84 (1st Cir. 2008). Instead, the court is free to disregard a party's desired inference in favor of a competing inference, provided the latter is plausible. See Torres-Lazarini v. United States, 523 F.3d 69, 72 (1st Cir. 2008) (court's choice between "plausible but competing inferences" from evidence presented at bench trial cannot be clearly erroneous) (citing Cape Fear, Inc. v. Martin, 312 F.3d 496, 500 (1st Cir. 2002)). The court here determined that, on the basis of Reyes's findings reached in good faith, Reyes and the prosecutors who acted on the findings in seeking González's indictment did so properly. We think this was a plausible inference drawn from Reyes's testimony which, as noted above, the district court correctly credited.

Accepting, then, the facts the district court found to have been proven and the reasonable inferences drawn by the court, we find no infirmity in its application of the law. Puerto Rico law requires both malice and action without probable cause to sustain a malicious prosecution claim, González-Rucci I, 405 F.3d at 49, and the court's factual findings plainly reveal that neither was present in these circumstances. We accordingly affirm the dismissal of this claim, and proceed to González's challenge to the dismissal of the abuse of process claim.

-11-

### C. Abuse of Process Claim

A plaintiff must prove two elements to make out a claim for abuse of process under Puerto Rico law: (1) that the defendant had a bad motive; and (2) that it used the legal process for an improper, collateral objective. González-Rucci I, 405 F.3d at 49 (quoting Microsoft Corp. v. Computer Warehouse, 83 F. Supp. 2d 256, 261 (D.P.R. 2000)). In contrast to malicious prosecution claims, which "are generally directed to a legal action as a whole," abuse of process claims "typically cover[] challenges to the legal action's procedural components," such as subpoenas or discovery mechanisms. Id. (citing Nogueras-Cartagena, 172 F. Supp. 2d at 316).

The district court found that González "did not meet her burden of showing any procedural component of her criminal prosecution was influenced by a bad motive, or conducted with the purpose of attaining an improper collateral objective," for two reasons. González-Rucci II, 460 F. Supp. 2d at 314. First, she failed to put forth any evidence to show that Reyes or the prosecutors obtained her indictment by presenting knowingly false testimony to the grand jury. Second, she failed to prove that any aspect of Reyes's investigation was at all related to her rejection of Núñez -- and thus potentially tainted by the latter's alleged resentment.

-12-

What we have said above allows us easily to dispose of this ground of appeal. The district court was well within its discretion in determining that Reyes's investigation, and the actions of the U.S. Attorney's Office in response to Reyes's findings, were performed in good faith and were not influenced by Núñez or anyone else at the INS office hostile to González. Without this link, the record does not show the requisite bad motive on the part of Reyes or the prosecutors who sought subpoenas, undertook discovery, and participated in the other procedural aspects of González's criminal case. As such, we must also affirm the dismissal of González's abuse of process claim.

### III. <u>Conclusion</u>

For the foregoing reasons, we affirm the dismissal of González's claims in all respects.

**<u>Affirmed</u>**.