# United States Court of Appeals
## For the First Circuit

No. 20-1792

FRANCISCO J. REYES-CAPARROS,

Plaintiff, Appellant,

v.

MERRICK B. GARLAND,[*]
UNITED STATES ATTORNEY GENERAL,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Joseph N. Laplante,[**] U.S. District Judge]

Before

Lynch and Selya, Circuit Judges,
and McConnell,[***] District Judge.

Bamily López-Ortiz, with whom Lizabel M. Negron-Vargas was on brief, for appellant.
Sean R. Janda, Attorney, Civil Division, United States Department of Justice, with whom Nathaniel R. Mendell, Acting United States Attorney, District of Massachusetts, and Jason C. Weida, Assistant United States Attorney, District of Massachusetts, were on brief, for appellee.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Merrick B. Garland has been substituted for former Attorney General William P. Barr as the defendant-appellee.
[**] Of the District of New Hampshire, sitting by designation.
[***] Of the District of Rhode Island, sitting by designation.

February 22, 2022

**MCCONNELL**, <u>District Judge</u>.  Francisco J. Reyes-Caparros ("Mr. Reyes"), a former intelligence specialist for the United States Attorney's Office ("USAO") for the District of Puerto Rico, sued his former employer under Title VII of the Civil Rights Act of 1964 alleging discriminatory retaliation and constructive discharge resulting from a hostile work environment. A jury returned a verdict on liability for retaliation and awarded Mr. Reyes the statutory maximum of $300,000 in damages. Because of the equitable nature of damages for constructive discharge and at the urging of both parties, the district court charged the jury to return an advisory verdict on that issue. That verdict was also in Mr. Reyes's favor, so he then sought a judgment of front and back pay from the district court. The court rejected the jury's advisory verdict on the basis that the verdict was not supported by the evidence, determining that Mr. Reyes was not constructively discharged and therefore not entitled to front or back pay.

Mr. Reyes appeals, arguing that the jury's verdict on constructive discharge was not advisory, but binding on the district court. He also argues that the district court committed legal error in rejecting that verdict and making its own findings on constructive discharge. Because there was no clear error in the district court's findings, we affirm.

I.   Facts

"We recount the facts as supportably found by the district court." Bolduc v. United States 402 F.3d 50, 52 (1st Cir. 2005); see also Gonzalez-Rucci v. INS, 539 F.3d 66, 67 (1st Cir. 2008) ("As this case comes to us following a bench trial, we recount the relevant facts as found by the district court, consistent with record support.").

Mr. Reyes worked for the USAO for the District of Puerto Rico as an Intelligence Specialist, from 2009 until he resigned in February 2015. Mr. Reyes's problems at work began in February 2012 when he gave a ballistic vest to an Assistant United States Attorney, who unbeknownst to Mr. Reyes had filed an employment discrimination claim against the office. Days later, he was called into a management meeting and chastised for supplying the vest to one of the office "crazies" and "helping her become a victim."

Mr. Reyes points to this as the moment when three years of retaliatory conduct by his supervisors against him began, creating a hostile work environment. He alleges that his supervisors micromanaged him, moved his office, and unjustly reprimanded him. Mr. Reyes also came under investigation in October 2013 by the Federal Bureau of Investigation ("FBI") and the Department of Justice's Office of Inspector General ("OIG") after he accepted an invitation to attend a program in Russia hosted by an organization led by a known Russian spy. This investigation led

to the FBI restricting his access to FBI-controlled office space and information during its pendency. The restrictions caused Mr. Reyes to be furloughed during the 2013 government shutdown and, when he returned to work, he was reassigned to paralegal duties. Shortly thereafter, Mr. Reyes filed his first Equal Employment Opportunity ("EEO") complaint alleging retaliation.

During this time, Mr. Reyes was reprimanded for posting an inappropriate picture of a security guard and gossiping about co-workers suspected of having an affair, and suspended for lack of candor and negligent performance of an assignment in which he was tasked with collecting and presenting statistics related to firearms cases prosecuted by the USAO. His supervisor asked him for a doctor's note when he took a full day's leave for a medical appointment after pictures of him on the beach that same day were posted on Facebook.

He says his supervisors retaliated against him by heavily editing a memorandum he submitted to the chief of the Appellate Division. Mr. Reyes alleged that a move to a different building where he was assigned to work on Social Security fraud investigations was retaliatory. The OIG investigation resulted in a report that Mr. Reyes violated Department of Justice travel policy and showed poor judgment in accepting the Russian diplomat's invitation.

Mr. Reyes filed a second complaint with the department's Equal Employment Office in October 2014. The record suggests that the plaintiff had been considering a career transition for some time. He had been attending law school and, around the same time, he began looking for other jobs, speaking with a relative in Florida about an attorney position within his law firm. He sought to be reinstated as an intelligence specialist but he could not fulfill all the duties of that role. This was because, even though OIG finished its investigation and issued a report, his access to FBI physical space and information was still restricted, because the FBI had not completed its investigation. In February 2015, Mr. Reyes resigned his position with the USAO alleging the supposedly "unfounded" investigation of him as well as some of these incidents described above. Ultimately, Mr. Reyes accepted the position with his relative's law firm.

Mr. Reyes sued his former employer under Title VII citing a single claim of discrimination and retaliation and seeking both money damages and equitable relief. Prior to the start of trial and in response to a proposed jury instruction on constructive discharge that Mr. Reyes requested, the government filed a motion to preclude evidence of front pay and back pay at trial on the ground that that issue was not a part of his case. The district court granted that motion, but held that "in the event of a verdict in the plaintiff's favor, the court will permit further briefing

and argument on the availability of these remedies in equity and, if they are available, it will hold a post-trial evidentiary hearing on damages."

After the close of evidence, Mr. Reyes again requested a constructive discharge instruction and a verdict form question on constructive discharge. The government objected; the district court decided to instruct the jury on constructive discharge, but limit the jury's decision on this issue to an advisory finding. Mr. Reyes did not object to this instruction. The jury returned a verdict for Mr. Reyes, awarded him $300,000 in damages, and rendered an advisory finding that Mr. Reyes had been constructively discharged.

Post verdict, the government filed a Rule 50 motion, which the district court denied, and Mr. Reyes sought equitable relief of back and front pay on the constructive discharge advisory verdict. After inviting the parties to provide further argument and evidence, the district court determined that Mr. Reyes was not entitled to equitable relief on two grounds. It concluded first that Mr. Reyes's failure to assert a separate constructive discharge claim barred his claim to any equitable relief. The district court also independently reviewed the evidence at trial against the jury's advisory verdict and disagreed that it supported the jury's finding that he was constructively discharged. The court rejected the jury's advisory verdict and denied Mr. Reyes's request

for equitable relief; this appeal of our denial of equitable relief ensued.[1]

II. Analysis

While the parties raise several tangential issues in their briefing,[2] there are two main issues for the court's review: whether Mr. Reyes waived his objection to the district court's decision to submit the constructive discharge issue for an advisory verdict and whether the district court's decision to reject the advisory jury's verdict in Mr. Reyes's favor was clearly erroneous.

A. Mr. Reyes Waived His Objection to the District Court's Decision to Submit the Constructive Discharge Issue to an Advisory Jury

Federal Rule of Civil Procedure 39(c)(1) "grants a district court the discretion to empanel an advisory jury either on a party's motion or sua sponte." United States v. Shields, 649 F.3d 78, 83 n.5 (1st Cir. 2011). A decision to do so is reviewed for abuse of discretion. See, e.g., Schaffart v. ONEOK, Inc., 686 F.3d 461, 475 (8th Cir. 2012); Banco Indus. De Venezuela, C.A. v. Credit Suisse, 99 F.3d 1045, 1049 (11th Cir. 1996). In this case, all parties agreed to submit the constructive discharge issue to

---

[1] The government initially appealed the adverse jury verdict, but subsequently dropped its appeal.

[2] Mr. Reyes takes issue with the district court's legal determination that he could not make out a constructive discharge claim because he did not allege it as a separate and distinct claim from his retaliation claim. The court need not address this argument because its ruling on the district court's substantive decision is dispositive of this appeal.

the jury for an advisory verdict because the remedies for that aspect of Mr. Reyes's case were equitable and, if appropriate, could only be awarded by the district court.

Mr. Reyes contends that he was entitled to a binding verdict on the issue of whether he was constructively discharged as a part of his retaliation claim and now argues that the district court erroneously labeled it as an "advisory" verdict. Mr. Reyes's position below dooms his appeal on this issue. "The proposition is well established that, 'absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.'" In re Net-Velazquez, 625 F.3d 34, 40 (1st Cir. 2010) (quoting Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992)). "Though sometimes severe in effect, this raise-or-waive rule 'is founded upon important considerations of fairness, judicial economy, and practical wisdom.'" Id. (quoting Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995)).

The record contains no evidence that Mr. Reyes raised an objection below to the jury giving an advisory verdict on constructive discharge. The proposed jury verdict form stated that the question of constructive discharge would be an advisory verdict, the proposed jury instructions stated that it would be an advisory verdict, and the actual charge to the jury stated that it

would be an advisory verdict. Mr. Reyes did not object to any of these. In fact, Mr. Reyes's counsel told the judge during the charge conference that the jury's determination on constructive discharge would be, "advisory, the Court is not bound by it." Because he did not split hairs then, as he does now, that the advisory verdict on constructive discharge liability was binding and the district court's discretion only went to the amount of equitable relief to award, the court rejects that argument as waived. On the record before us, we cannot identify an abuse of discretion in the district court's empaneling of an advisory jury.

B. Sufficiency of the Evidence

Now that it is settled that the jury's verdict on constructive discharge was advisory, we review the district court's next steps upon receiving such a verdict. Because an advisory jury's role "is, as the name would suggest, purely advisory in nature[,]" "'[t]he responsibility for the decision-rendering process remains with the trial judge' and 'it is in its discretion whether to accept or reject, in whole or in part, the verdict or findings of the advisory jury.'" Shields, 649 F.3d at 84 n.5 (alteration in original) (quoting 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2335, at 354–56 (3d ed. 2008)); see Fed. R. Civ. P. 39(c)(1).

But "[i]n an action tried on the facts . . . with an advisory jury, the court must find the facts specially and state

- 10 -

its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). The district court's decision either to accept or reject an advisory verdict "must not be set aside unless clearly erroneous." Fed. R. Civ. P. 52(a)(6); see Windsor Mount Joy Mut. Ins. Co. v. Giragosian, 57 F.3d 50, 53 (1st Cir. 1995). A "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 394-95 (1948)).

The district court has the ultimate discretion to reject an advisory verdict as long as it makes an independent review of the law and facts presented at trial. That is precisely what the district court did in this case.

In order to prove he was constructively discharged, an employee "must prove that his employer imposed 'working conditions so intolerable [] that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities.'" See Landrau-Romero v. Banco Popular De P.R., 212 F.3d 607, 613 (1st Cir. 2000) (alteration in original) (quoting Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 46 (1st Cir. 1999)). Accordingly, an employee must show some sort of adverse employment action short of actual termination - such as one might also see in a retaliation or discrimination case - to make out a claim of

constructive discharge. "Typically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting [him], reducing [his] salary, or divesting [him] of significant responsibilities, or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering [him] for promotion after a particular period of service." Blackie v. Maine, 75 F.3d 716, 725-726 (1st Cir. 1996) (citations omitted). "To prove constructive discharge, a plaintiff must offer evidence of harassment at least as severe (if not more) than that required for a hostile work environment claim." Hall v. FMR Corp., 667 F. Supp. 2d 185, 202 (D. Mass. 2009); see id. ("Petty annoyances, minor workplace indignities, and hurt feelings do not make out a constructive discharge claim . . . .").

After hearing all the evidence admitted at trial, and after inviting the parties to produce further evidence on this issue, the district court rejected the jury's advisory verdict, and instead found that Mr. Reyes had failed to prove his claim of constructive discharge.[3] The district court recounted Mr. Reyes's

---

[3] The government raises the fact that Mr. Reyes only challenges the district court's legal conclusion that he could not recover on his equitable claim because he failed to bring a separate constructive discharge claim and not its substantive conclusion that he did not present enough evidence of such a claim. The government urges us to affirm the district court's order because Mr. Reyes waived this argument. Mr. Reyes does argue that the district court should have accepted the advisory verdict on

- 12 -

claims that beginning three years before he resigned, his supervisors gave him greater oversight, micromanaged him, moved his office to a less desirable floor (closer to his supervisor), and reprimanded him for mocking a security guard on site. He alleged retaliation in the form of an FBI investigation after he sought permission to attend a cultural program in Russia hosted by a Russian spy.  Because of this ongoing investigation, Mr. Reyes was restricted from working in areas that might require him to interface with the FBI.

The district court, after reviewing all the evidence, found that Mr. Reyes did not meet the standard for constructive discharge because the actions giving rise to his resignation had been ongoing for three years and the final act he asserts occurred four months before he resigned.  Along with the lack of timeliness the district court also noted that Mr. Reyes always retained the same title and salary throughout the three years of his alleged harassment. The district court correctly found that no reasonable person would have felt compelled to resign when faced with these conditions. Gerald v. Univ. of P.R., 707 F.3d 7, 25 (1st Cir. 2013).

---

constructive discharge on the facts because the jury also found that he proved his retaliation claim based on those same facts. While he does not recount each fact on which the jury could have reached its verdict, we will look at the district court's independent review of the facts in its discretionary role to accept or reject the advisory verdict.

Further, the evidence showed that Mr. Reyes voluntarily left to pursue a new career as an attorney, a move that he had been planning for some time before he resigned.

The fact that the jury found in Mr. Reyes's favor on his retaliation claim does not raise doubt as to the district court's rejection of its advisory verdict on constructive discharge. The district court's order explaining its findings is thorough, fact-based, grounded in the facts and law, and therefore we cannot say that its factual findings were clearly erroneous. See Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990) (explaining that, when reviewing for clear error, appellate courts "ought not to upset findings of fact . . . unless, on the whole of the record, [they] form a strong, unyielding belief that a mistake has been made").

III. Conclusion

Because the district court's factual determination that Mr. Reyes was not constructively discharged was not clearly erroneous, the judgment of the district court is

**Affirmed**.